A. SUMMERLIN, *Appellant*, v. ORANGE SHORES, INC., a Corporation; JOHN AND KATHERINE SEIDENSCHMIDT; MIDLAKES REALTY CORPORATION, and FLESCH BROTHERS, a Corporation, *Appellees*.

Division A.

Opinion filed May 28, 1929.

*E. C. Wimberly,* for Appellant;

*Johnson, Bosarge & Allen,* for Appellees.

ELLIS, J.—J. A. Dugger and wife, Winifred, owed $35,000.00 to George M. Peabody for part of the purchase price of certain lands in Polk County and gave him three promissory notes for $11,666.67 each, dated April 18, 1925, and payable respectively one, two and three years after date.

To secure the payment of those notes they executed a mortgage to Peabody upon the land purchased by the terms of which the Duggers agreed to pay the notes and interest accruing thereon and all costs and attorney's fees which Peabody might be required to pay in collecting the notes by foreclosure or otherwise. The mortgage contained covenants to the effect that the mortgagor would pay the notes and interest when due; pay all taxes assessed upon the

lands; keep the citrus groves located upon the land in first-class condition by proper working, spraying, fertilizing and plowing, and that upon failure to observe any of the covenants the mortgagee should have the opinion of declaring the entire debt to be due.

The first note was paid and interest upon the other two to October 18, 1926. The second note, which became due in April, 1927, was not paid nor was interest paid upon either note after October 18, 1926.

In May, 1927, Peabody sold and transferred to A. Summerlin the two notes and mortgage. Summerlin brought his bill to foreclose the mortgage lien in June, 1927, against Orange Shores, Inc., a corporation, John and Katherine Seidenschmidt, Midlakes Realty Corporation, and Flesch Brothers, also alleged to be a corporation.

It is alleged that the mortgage was duly recorded on May 22, 1925. Before the first note became due Dugger and wife conveyed the land to Hartridge-Cannon Company, a Florida Corporation, the latter assuming the mortgage debt. Hartridge-Cannon Company conveyed to Orange Shores, Inc., a Florida Corporation, the latter assuming the mortgage debt. The Corporation last named paid the first note and interest due in April, 1926.

The lands mortgaged were described as: Lots Seven (7), Eight (8) and Seventeen (17) of Blount & Whitledge's Subdivision of Government Lots Two (2), Three (3) and Four (4) of Sec. 18, Township 28 South, Range 26 East, as shown of record in Plat Book 5, page 3, of the public records of Polk County, Florida.

The bill alleges that the Orange Shores, Inc., subdivided Lots Seven (7) and Eight (8) into lots and blocks and there has been released from the lien of the mortgage Lots 11, 12, 13, 14, 15 and 16 of Block One (1), Lots 10, 20 and

22 of Block Two (2), Lots 1, 2, 3, 16, 17, 18 and 22 of Block Three (3) and Lots 1, 2 and 20 of Block Four (4).

John and Katherine Seidenschmidt, Midlakes Realty Company and Flesch Brothers are made parties defendant because they are alleged to have some interest or claim on the lands. The bill contains the usual prayer for an accounting, payment of the debt and sale of the premises if necessary, deficiency judgment, subpoena and general relief.

Three months after the bill was filed the defendant Flesch Brothers, a corporation, answered averring that it held a mortgage on all the fruit grown on the "Orange Shores Addition to the Town of Winter Haven" and "Lot 17 of Blount & Whitledge's Subdivision of Government Lots 2, 3 and 4, of Section 18, Township 28 South, Range 26 East."

This is part of the land covered by the mortgage held by the complainant. It is averred that the mortgage was given on November 3, 1926, to secure a note for $3,000 due six months thereafter. The mortgage contained a clause that if the net proceeds of the sale of the crops during the season of 1926-27 should not be enough to pay the debt the mortgage should be held to apply upon subsequent crops until the indebtedness was fully paid. It was averred that the fruit crop of 1926-27 only sold for $1,024.04, thus leaving a balance due of $2,155.96, and that Flesch Brothers has a right to "pick and mortgage" the fruit on the said grove because its says its lien upon the fruit crop is superior to that of the complainant's mortgage.

A few days after the answer of Flesch Brothers was filed the complainant amended his bill by alleging the existence of a large citrus grove upon the lands; that it was being neglected; that there was a large crop of fruit on the grove which would soon be in condition for marketing and that unless the citrus crop was conserved and applied to the

reduction of the complainant's mortgage that he would not be able to realize a sufficient amount from the sale of the land to pay the debt. There was a prayer for the appointment of a receiver to care for the citrus grove, gather and market the fruit and an injunction to restrain others from going upon the property and gathering the fruit.

On the date the answer of Flesch Brothers was filed the complainant moved to strike it. The point presented is that Flesch Brothers' mortgage upon the crop of citrus fruit is subordinate to the complainant's mortgage lien on the land and the answer therefore is no defense to the relief sought by the bill of complaint. The motion was denied on the same day and Flesch Brothers submitted a petition to be permitted to enter upon the lands and gather, market and sell the fruit and apply the proceeds to its mortgage given by the Orange Shores, Inc. The petition alleged that a receiver had been appointed at complainant's request to take charge of the grove. This petition was granted by an order made on the same date. The complainant appealed from both orders, the one denying the motion to strike the answer of Flesch Brothers and the one allowing it to enter upon the land and gather the fruit crop.

In denying the first motion, that is to say, the motion to strike the answer, the chancellor wrote an elaborate opinion which we have examined with much interest and benefit to ourselves.

The chancellor's view, as expressed in his opinion, that the Flesch Brothers' mortgage was both a real estate mortgage and a chattel mortgage of the 1926-1927 fruit crops and all succeeding crops until the debt to Flesch Brothers was paid is, in our opinion, subject to some qualifications, at least in so far as it was the chancellor's view that the Flesch Brothers' mortgage upon the crops of fruit was a continuing chattel mortgage of successive crops of fruit giving to

the mortgagee the "right to pick and market all crops of fruit until such time as the said instrument is discharged."

The Flesch Brothers' mortgage was a mortgage upon the lands covered by the mortgage held by complainant and executed by Dugger and wife to Peabody, and it was expressly taken subject to the lien of that mortgage. The Flesch Brothers' mortgage contained several personal covenants by which the mortgagor, Orange Shores, Incorporated, agreed: First, to pay the debt and perform all covenants; second, to market through Flesch Brothers all crops then growing or to be grown on the land during the season of 1926-1927 even if the loan should be repaid before the entire crops for the season were marketed. It was agreed that a season began September 1st and continued until August 31st of the following year. Third, authorizing Flesch Brothers to insure the crops against freeze, wind, drought, insects and other evils that might exist; fourth, authorizing Flesch Brothers to apply the proceeds of the sale of the crops to the debt; fifth, that if the proceeds of the sale of the crops for the 1926-1927 season should not be sufficient to pay the debt then Flesch Brothers should have the option of applying the agreement "to all crops on said lands during subsequent seasons and until all indebtedness is fully paid; and this lien and this agreement hereby created shall, at the option of said party of the second part, remain in full force and effect until the end of the season in which said indebtedness is paid." Sixth, that Flesch Brothers may at its discretion have the crops picked, packed and marketed at any time; seventh, "That this agreement or contract is a covenant running with the lands and that the sale of said grove property by the party of the first part shall not void or invalidate the same unless assented to in writing by the party of the second part"; eighth, that in the event of default in payment of the debt the whole should at the

mortgagee's option become due and payable and the mortgagor agreed to pay all costs and attorney's fees incurred in the collection of the debt.

Whatever lien upon the 1927-1928 crops Flesch Brothers may have had superior to the lien held by the complainant, existed, if at all, by virtue of the fifth and sixth covenants under which Flesch Brothers should have the option of applying the provisions of the preceding covenants to the crop of the latter season and all succeeding seasons "until all indebtedness is fully paid."

The complainant began his suit to foreclose the mortgage three months before the 1927-1928 orange crop season began.

"Growing trees, fruit, and grass, which are the natural product of the earth, growing spontaneously and without cultivation, are parcel of the land, and, as part of it, descend with it to the heir. Until severed from the land, growing trees, fruit, and grass cannot be seized as chattels upon execution. They are within the Statute of Frauds, and cannot be sold or conveyed by parol; nor can any valid agreement for their sale be made, except by an agreement in writing. On the other hand, annual products of the earth, such as crops of grain and vegetables, which are the result of yearly labor and cultivation, are chattels while still growing, and as such go to the executor rather than the heir. They may be seized on execution as chattels, and may be sold or bargained by parol. In other words, crops which grow only by yearly cultivation are chattels, in contemplation of law, though not severed from the land; but trees and grass, and all other natural products of the earth, are parcel of the land until actually severed from it, or until so severed in contemplation of law." See Jones on Chattel Mortgages, 145; Bank of Lansingburg v. Crary, 1 Barb. (N. Y.) 542; Crosby v. Wadsworth, 6 East. 602; Carring-

ton v. Roots, 2 Mee. & W. 248; Rodwell v. Phillips, 9 Mee. & W. 501; Wintermute v. Light, 46 Barb. (N. Y.) 278; Parker v. Staniland, 11 East., 361; Jones v. Flint, 10 Ad. & E. 753, 37 Eng. Com. Law, 217.

"Trees and shrubs planted in a nursery garden, for the temporary purpose of cultivation and growth until they are fit for market, and then to be taken up and sold, pass by a mortgage of the land, so that neither the mortgagor nor his assignee or creditors can remove them as personal property. One claiming that trees and shrubs, whether growing naturally or planted and cultivated for any purpose, are not part of the realty, must show special circumstances which take the particular case out of the general rule; he must show that the parties intended that they should be regarded as personal chattels." See 1 Jones on Mortgages (7 Ed.) 434; Maples v. Millon, 31 Conn. 598; Adams v. Beadle & Slee, 47 Iowa 439; Price v. Brayton, 19 Iowa 309.

A distinction exists between crops which are the *annual* product of *labor* and *cultivation* of the earth and growing trees, fruits and grass which are the *natural* product of the earth.

The former are chattels, the latter are a part of the realty and continue to be so until severed from the freehold. This distinction however has in later times been somewhat modified in some jurisdictions to the extent of classing as *fructus industriales* trees and shrubs raised in a nursery for the purpose of sale and transportation, Whitmarsh v. Walker, 1 Metc. (Mass.) 313; Miller v. Baker, 1 Metc. (Mass.) 27; hops, the root from which the vine grows being perennial but their production necessitating the annual industry of man, Frank v. Harrington, 36 Barb. (N. Y.) 415; peaches, apples and other fruit cultivated for the market, Vulicevitch v. Skinner, 77 Cal. 239, 19 Pac.

R. 424; Purner v. Piercy, 40 Md. 212, 17 Am. R. 591; Smock v. Smock, 37 Mo. App. 56.

The old rule was that where the root of the plant or the source from which the product came was perennial, existing in the soil, both the tree, vine and the fruit were part of the realty and descended to the heir; but such product of the soil as depended upon a yearly planting and man's industry in cultivating and manuring the plant as it germinated and grew, was deemed to be a chattel and passed to the executor or could be taken on execution.

Since fruits of trees, such as peaches, apples, and other fruits, depend so much upon yearly cultivation and labor, including spraying for insects which attack and destroy the fruit, the yearly products of such perennial plants and trees are considered as chattels while the tree itself is regarded as part of the realty.

The mortgage of products grown upon a farm, however, was invalid as a chattel mortgage if made before the preparation for the yearly crop began. Long v. Hines, 40 Kan. 220, 19 Pac. R. 796, 10 A. S. R. 192; Hutchinson v. Ford, 9 Bush. (Ky.) 318, 15 Am. R. 711; New Lincoln Hotel Co. v. Shears, 57 Neb. 478, 78 N. W. R. 25, 73 A. S. R. 524, 43 L. R. A. 588; Loftin v. Hines, 107 N. C. 360, 12 S. E. R. 197, 10 L. R. A. 490; Rochester Dist. Co. v. Rasey, 142 N. Y. 570, 37 N. E. R. 632, 40 Am. St. R. 635.

But under the statute in this State, Sec. 5741 Comp. Gen. Laws 1927, valid mortgage liens may be created upon agricultural, horticultural or fruit crops then planted, growing, or to be thereafter planted, grown or raised, provided that the lands upon which said crops are grown or raised, or are to be thereafter grown or raised, are fully described in said mortgage. Prior to the enactment, however, of that statute the Dugger-Peabody mortgage, which complainant seeks to foreclose, was executed and became

a lien upon the trees and fruit thereon, which not being severed in fact or by law passed with the realty as a part of it.

The above quoted statute cannot be interpreted literally because it is obvious that a mere lessee of land for a term of years could not make a valid chattel mortgage of crops to be grown by another upon the land during a year beyond the term of his lease even if the land was fully described in the mortgage. Nor do we think that a valid chattel mortgage could be given upon fruits for an indefinite period of time extending over years operating to give a superior lien over a prior mortgage upon the lands so as to subject fruit, which has not yet begun in its maternal flower to form the first stage of its production, to a superior lien of the chattel mortgage. The mortgage could only attach, if valid at all, to such interest as the mortgagor had in the crops at the time they come into being. See Christianson v. Nelson, 76 Minn. 36, 78 N. W. R. 875, 79 N. W. R. 647; Hall v. State, 2 Ga. App. 739, 59 S. E. R. 26.

But at the time the 1927-1928 crop of oranges came into being the mortgagor had already placed a superior lien upon the trees and fruits which were a part of the land. Jones on Chattel Mortgages, Sec. 145 (5 Ed.). See also Griffith v. Hulion, 107 So. R. 354, 90 Fla. 582.

In Penryn Co. v. Sherman-Worrell Co., 142 Cal. 643, 76 Pac. R. 484, 100 Am. St. R. 150, it was held that a chattel mortgage in a crop of fruit given subsequent to the execution of a deed of trust on the land but prior to the foreclosure sale of the land, a purchaser at such foreclosure sale took the land free from the lien of the chattel mortgage since the latter did not work a severance of the fruit from the realty.

The rule announced in the above case is the correct one. A foreclosure decree enforces the mortgagee's lien and

operates through a master's deed to transfer the mortgagor's title to the purchaser at the sale. Jones v. Hiller, 65 Fla. 532, 62 So. R. 583.

The title acquired at foreclosure sale relates back to the date of mortgage. Logan v. Stieff, 36 Fla. 473, 18 So. R. 762.

The complainant having brought his action to enforce the mortgage upon default in the payment of the debt and showing by his bill the necessity for a receiver to preserve the mortgage security while the fruit was still upon the trees had a superior right to it than the mortgagor or his assigns.

We also regard the provisions of the Flesch Brothers' mortgage not as constituting a chattel mortgage of the 1926-1927 crop of fruit but as a contract to market the fruit through the mortgagee, and the clause under which the mortgagee claims the right to the possession of the 1927-1928 crop a mere executory agreement to give the mortgagee an option to take possession of the crop and if valid would create no lien on the crop, but affords only a remedy in damages for failure to deliver the fruit.

If the theory of the learned Chancellor were sound, as expressed in the opinion and decree rendered by him, it would defeat the security of the first mortgagee of the land. It would destroy effectually the value of the greater part of producing lands or farm land securities. One would scarcely accept as security for a loan a mortgage upon lands, which the owner might at any time thereafter encumber by a burden, such as this, superior in dignity to the first mortgage.

We hold that before default in the payment of the debt secured by the first mortgage the owner may give a chattel mortgage upon the fruit *in esse* and on default in such mortgage the mortgagee may take possession under pro-

visions like those contained in the so-called chattel mortgage, but that the owner cannot create a lien superior to the first mortgage upon the land by attempting to mortgage fruit not yet in existence and which does not come into existence until after default in the first mortgage and proceedings to foreclose the same.

In this view of the case we are of the opinion that the Chancellor's order denying the motion to strike the answer was error as also the order granting the petition of the defendant to be permitted to take the fruit and remove it in payment of the debt due upon the second mortgage.

So the orders are reversed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

BROWN, J., (concurring) : While concurring in the opinion in this case, I am not at all sure that the same conclusion could have been reached if complainant's mortgage had been executed *after* Section 5741 Comp. Gen. Laws had gone into effect.