C. S. MCEWEN AND BESSIE MCEWEN, his wife, *Appellants*, vs. GROWERS LOAN & GUARANTY COMPANY, et als., *Appellees*.

139 So. 805.

Division A.

Opinion filed February 8, 1932.

Petition for rehearing denied March 22, 1932.

*G. P. Garrett,* for Appellants;

*M. M. Kendall; Duncan, Hamlin & Duncan* and *Sutton, Tillman & Reeves,* for Appellees.

ELLIS, J.—C. S. McEwen and wife, Bessie McEwen, executed a mortgage to Growers Loan & Guaranty Company upon certain described lands in Lake County and all the citrus fruit crops growing and to be thereafter grown upon the lands for a period of five years and until the payment of the indebtedness which the mortgage was given to secure.

The mortgage was given to secure the payment of an indebtedness due by McEwen to the mortgagee in the sum of ten thousand dollars and all renewals and extensions thereof and to secure the payment of further loans and advances that might be made by the mortgagee not to exceed however a total of twenty-five thousand dollars. The mortgage was dated April 2, 1928. There was a note of that date for the sum of ten thousand dollars payable nine months after date with interest at eight per cent. per annum from maturity and signed by C. S. McEwen and described in the mortgage. There was another note for the sum of fifteen thousand dollars dated March 8, 1929, payable ninety days after date bearing the same rate of interest and signed by C. S. McEwen. Each note was payable to Growers Loan and Guaranty Company or order. There was a covenant in the mortgage that the property was free of all liens except a mortgage to A. R. Kunz for the sum of twenty-eight thousand five hundred dollars. The mortgagors agreed to cultivate the fruit trees and give them the care and attention required to produce good merchantable fruit and keep it insured against loss by hail, windstorm or frost; to pay taxes and assessments that may be imposed upon the premises or fruit crops and pay all costs incurred in proceedings for the collection of the amount secured by the mortgage and to pay the debt

evidenced by the note and all other obligations secured by the mortgage.

It was agreed between the parties that the Growers Loan and Guaranty Company operates for the purpose of financing the production and harvesting of crops owned by growers who are members of Citrus Growers Associations which ship and market their crops through the Florida Citrus Exchange and that one of the considerations for the loans secured by the mortgage was that the mortgagors should ship and market the citrus fruit crops through the proper agency of the Florida Citrus Exchange.

- The mortgagors agreed to become and continue a member of the Lake Region Packing Company as long as that Association is active and affiliated with Florida Citrus Exchange and if the Lake Region Packing Company became inactive or severed its relations with the Florida Citrus Exchange then to become a member of another association affiliated with the Florida Citrus Exchange and to conform to the rules, regulations and by-laws of the Association and to market through the Association, sub-exchange and Florida Citrus Exchange and not otherwise all of the citrus fruit now growing or hereafter to be grown on the land during the entire period in which the indebtedness or any part of it is owing and unpaid and in all events to ship and market the fruit during the seasons of 1928-29 to 1930-31, even if the indebtedness should be repaid before the entire. citrus fruit for said seasons should be marketed. It was agreed that the proceeds of the sale of the citrus fruits should be paid by the Association or Citrus Sub-Exchange or Florida Citrus Exchange to the mortgagee to be applied on the indebtedness until the principal, interest, insurance and cost of collection is. fully paid.

It was agreed that the mortgagee, for the protection of its interests, might have the fruit picked, packed and marketed at any time and for that purpose the mortgagors

180

appointed the Citrus Growers Association their attorney in fact to act upon the demand of the mortgagee to the end that the proceeds of the sale should be applied to the mortgage indebtedness.

It was agreed that if the mortgagors made default in the payment of interest or principal for thirty days or failed to pay taxes, or cultivate the trees, or pay insurance, or to immediately become a member of Citrus Growers Association, or to ship fruit through that organization, or to comply with and perform any of the covenants on their part to be performed then the mortgagee might declare all the indebtedness secured by the mortgage to be immediately due and should have the right to bring foreclosure proceedings and the mortgagee should in such event be entitled without notice to the mortgagors to the appointment of a receiver to take charge of the property and to pick the fruit and market it and apply the proceeds of the sale to the payment of the indebtedness. By the last clause of the mortgage the mortgagors appointed and constituted the mortgagee attorney in fact for the mortgagors in case of default in the payment of the indebtedness or of any breach of the terms of the mortgage to take possession of the fruit crops without suit and to pick and market the fruit as provided in the mortgage and apply the proceeds of its sale to the costs and expenses of marketing and to the discharging of the indebtedness and attorneys' fees and if any balance remained to pay it over to the mortgagor.

In August, 1929, the mortgagee, Growers Loan and Guaranty Company, began its suit against the mortgagors, C. S. McEwen and wife, Bessie McEwen, W. T. Johnson and George W. Burden as Receiver of the Church Street Bank of Orlando, to enforce the mortgage lien. The prayer was for a Receiver to take charge of the property and care for it in a scientific manner and to enjoin the mortgagors from interfering with the Receiver; that the mortgage be re-

formed to describe properly the property intended to be covered by it; for an accounting between the mortgagors and mortgagee to ascertain the amount due and sale of the premises or property and application of the proceeds of the sale to the payment of all expenses and indebtedness and that the lien of the mortgage be declared to be superior to all others claimed except the Kunz mortgage heretofore mentioned and for general relief.

It was alleged that in March, 1929, McEwen became in-·debted to the mortgagee, complainant, in the sum of fifteen thousand dollars as evidenced by his promissory note for that amount payable ninety days after date. The note was described and a copy of it was attached to the bill as exhibit B and made a part of it.

It alleged the execution of the mortgage as described on April 2, 1928, and a copy of the note for ten thousand dollars was attached to the bill as Exhibit A and made a part of the bill. The mortgage was also described, a copy of which was attached to the bill as a part of it and marked Exhibit C. It was alleged that the money was advanced by the complainant to McEwen to enable him to produce the citrus fruit crops upon the land described and was in accordance with the provisions of Section 3515 Revised General Statutes 1927 and of Chapter 10279 Laws 1925 (Secs. 5741-5742 C. G. L. 1927).

This act, Chapter 10279, *supra*, Sec. 5741 C. G. L. 1927, was discussed in Summerlin v. Orange Shores, Inc., 97 Fla., 996, 122 South. Rep. 508.

It is alleged that there is located upon the lands described in the mortgage embracing about 116 acres approximately five thousand two hundred and twenty-five bearing citrus trees of which about two thousand are old and thoroughly matured trees; and that all the trees have been neglected by the mortgagor, the older trees not fertilized for more than a year nor properly pruned nor has the mortgagor sprayed or dusted the crop for the year and that as a re-

sult of such neglect the trees have not produced the crop that they should have produced; that the weeds and undergrowth have not been removed thus increasing the danger from fires.

The bill alleges that part of the principal sum of ten thousand dollars evidenced by the first note has been paid but that the balance of $6,102.84 has been due and unpaid for more than thirty days. Several items of interest on different amounts are alleged to be due and unpaid and that the principal sum of fifteen thousand dollars evidenced by the second note has been due and unpaid for more than thirty days and the complainant exercises the option to declare the entire debt described in the mortgage and notes to be due.

It was also alleged that the description of the land mortgaged was incomplete in that the land should have been described as being of Division H "according to the plat of the Town of Montverde" but that the quoted words were through inadvertence or mistake omitted from the description. It is also alleged that W. T. Johnson claims a lien upon the property by virtue of a judgment obtained against McEwen in Orange County and recorded in Lake County on April 26, 1929, and the complainant alleges its mortgage to be a lien of superior dignity; that George W. Burden as Receiver also recovered a judgment in Orange County against McEwen and a copy of it was recorded in Lake County in January, 1929, and that lien is inferior to complainant's lien.

On the 14th of August, 1929, the Chancellor upon application of the complainant appointed a Receiver of the properties who gave a bond for the faithful performance of his duties.

A motion for compulsory amendment to the bill and a special demurrer to the bill were both overruled. The purpose of these motions being to clarify the allegations of the bill as to the second note which was for fifteen

thousand dollars and to specify the credits and allowance to which the McEwens were entitled.

The receiver made a report on the 30th day of October, 1929, that he had applied fertilizer to the old trees and removed undergrowth and weeds from that portion of the property and had expended about twelve hundred dollars. He also reported that about $2,500. more should be expended in fertilizing and pruning the trees, harrowing the ground and spraying the trees. He also reported the work recommended should be done to comply with the requirements of the State Plant Board in connection with its program for the eradication of the Mediterranean fly.

The amended bill of complaint was filed on January 31, 1930. Its purpose was to give a history of the transactions between the complainant and McEwen culminating in the mortgage of April 2, 1928, and the note for $15,000. dated March 8, 1929.

From the allegations of the amended bill the transactions between the parties began prior to August 27, 1927, when a mortgage was executed to secure a note of ten thousand dollars and other advances which amounted to $12,500. and evidenced by three promissory notes maturing May 27, 1928; that the mortgage of April 2, 1928, described in the original bill was executed for the purpose of securing all indebtedness under the mortgage of August, 1927, which would be cancelled and that the note of June 8, 1928, for $15,000. represented the $12,500. indebtedness which was secured by the mortgage of August, 1927, and other supplementary loans. The amended bill contains practically the same prayers as the original except that there is an alternative prayer to the effect that if the court considers that the debt evidenced by the $15,000. note of June 8, 1928, is not secured by the mortgage of April 2, 1928, that the mortgage of August, 1927, be revived and the cancellation of that mortgage by the complainant be annulled and the complainant be allowed the benefit of the

lien of that mortgage and that the property be sold under both liens.

On March 10, 1930, the court denied a motion to dismiss the receivership which was created under the original bill. Motions to strike portions of the amended bill and a demurrer to the bill were denied.

An answer by George W. Burden, as Receiver of the Bank, was interposed asserting the lien of the judgment obtained by him. McEwen and wife also answered the bill.

The answer admits the execution of the note for ten thousand dollars and mortgage of August 27, 1927, to secure its payment but avers that the note was paid in full and was cancelled and returned to them and that complainant executed a release of that mortgage on June 9, 1928; that the notes for $12,500. executed prior to the mortgage of April 2, 1928, and alleged to have been secured by the mortgage of August, 1927, have been paid in full and returned to the defendant marked paid. The answer admits the indebtedness of ten thousand dollars and the execution of the note for that amount and the mortgage of April 2, 1928, to secure its payment but avers that the mortgage was executed to secure only that particular note and advances ''which may be hereafter made'' and denies that there was any agreement between the complainant and defendant that the mortgage of April 2, 1928, was intended to secure any balance upon any debt owed by the defendant to complainant and secured by the first mortgage, that is the mortgage of August 27, 1927, and denies that there is any clause in the mortgage of April 2, 1928, showing it to have been the purpose of the parties that any such prior debt should be secured by it.

The answer avers that the loan of ten thousand dollars secured by the mortgage of April 2, 1928, was obtained to apply on the Kunz mortgage and it denies the execution of the note for fifteen thousand dollars and avers that de-

fendant has no knowledge of the receipt of $796.11 alleged in the bill as a supplementary loan to the original indebtedness of $12,500. The answer admits the execution of the note for $15,000. on June 8, 1928, mentioned in the original and amended bills and attached to the latter bill as Exhibit D but avers that it was executed at the request of a Mr. J. C. Merrill, a representative of the "Citrus Exchange" and acting for the complainant, as a renewal of a note for that amount dated June 8, 1928, which the defendant had executed and which was in possession of "a bank" which would not release the original until the renewal note was executed. The renewal note was dated March 8, 1929, a copy of which is attached to the original bill as "Exhibit B" and to the amended bill as "Exhibit F" and complainant has failed to return to the defendant the note of June 8, 1928, of which the note of March 8, 1929, was in renewal. The answer denies the execution of the note for $15,000. dated June 8, 1928.

The answer avers that an accounting between the parties will reveal that the defendant has paid to the complainant all indebtedness and that the note for $15,000. dated March 8, 1929, was without consideration and obtained by fraud. Section XIV of the answer contains a long and detailed account of the evidence relating to the defendant's futile effort to secure a statement from the Lake Region Packing Company, the marketing agent for complainant and defendant, of the returns for the fruit marketed in 1929 and 1930 upon which the defendant bases an averment that the Packing Company and the complainant conspired to defraud the defendant and prevent him from securing an accounting. The answer denies any knowledge of the payment of taxes by the complainant. It denies neglect of the properties and avers the value of the same to be greater than any indebtedness due to the complainant and denies any failure to perform any covenant on defendant's part to be performed and avers the lack of

necessity for bringing the suit to foreclose. It avers lack of knowledge of any mistake in the description of property or of any interest in the premises claimed by W. T. Johnson or George W. Burden as Receiver of the Church Street Bank of Orlando.

The case as made by the original and amended bills and the answer interposed in defense reduced to a succinct statement of the questions involved is as follows: first, what, if any, amount is due upon the note for ten thousand dollars dated April 2, 1928; second, was the note for $15,-000. dated March 8, 1929, given in acknowledgment of a debt existing prior to April 2, 1928, and for advances made under the provisions of the mortgage of that date and secured by its terms or was it procured by misrepresentation and fraud and without consideration to support it.

W. M. Kennedy was appointed Special Examiner to take and report the testimony for the parties. The order was dated July 7, 1930. The answer was filed April 14, 1930, and no testimony was taken until July 17, 1930. An order was made on July 14th however upon application of complainant extending time for the taking of its evidence until August 1st and requiring defendant to submit his evidence by August 18, 1930.

On August 18th the time was extended until September 1st upon application of counsel for both parties. This was done upon the stipulation of the parties in writing.

The time was again extended upon application of both parties to September 8th and then by consent of parties the Examiner was required to file his report not later than October 1st and the Receiver was ordered not to pick or sell any of the fruit before that date without an order from the court.

The record discloses that the Special Examiner submitted his report of the testimony on October 1, 1931, and on November 28, 1930, the defendant McEwen moved the court to ''consider the final decree'' and ''the proof thereof

for said decree to be limited to the amended bill of complaint filed heretofore and the answer of respondent, C. S. McEwen.''

The grounds of the motion were that the testimony was not taken within three months after the cause came to an issue; that the order extending the time for taking the testimony was granted without notice to McEwen; that there was ample opportunity to take the testimony within the required time and there was no showing to justify the order. That motion was denied.

Then on December 12, 1930, a motion was made to strike all the testimony taken and exhibits and the Examiner's report which the motion recites was filed October 1, 1930. That motion was denied and on January 2, 1931, the Chancellor rendered a final decree which was entered on the 8th day of that month.

The decree found the equities with the complainant and decreed a foreclosure of the mortgage dated April 2, 1928. The amount found to be due to the complainant was $24,903.78 for principal and interest. Two thousand dollars was allowed as a reasonable solicitor's fee. The costs of the proceedings adjudged by the court as follows: $7,900.94 for expenditures by the Receiver and $900. for his compensation; $35.00 as compensation for the Special Examiner; $161.47 for his expenses in taking and reporting the testimony and $74.30 for sheriff's fees, publication costs and clerk fees, making a total of $11,070.77 or more than 44% of the principal debt and interest.

The description of the land was corrected as prayed for in the bill; the complainant's mortgage lien was declared to be prior to that of the defendants' who were made parties; the amount found to be due and all costs and expenses were required to be paid within three days in default of which the lands were ordered to be sold. W. M. Kennedy esquire was appointed Special Master to execute the decree and make his report.

C. S. McEwen and his wife entered their appeal on January 29, 1931, from that decree and made the same returnable to the Supreme Court on April 15, 1931.

On February 24, 1931, Mr. Justice Armstead Brown of this Court ordered that the appeal should have the force and effect of and operate as a supersedeas of the decree upon appellants giving a bond executed, conditioned and approved in accordance with law.

The chancellor on January 29, 1931, had by order fixed the penalty of the appeal bond at thirty thousand dollars to be approved by the clerk and when approved it should operate as a supersedeas. The defendant had moved to reduce the supersedeas bond to ten thousand dollars and the court on the same day denied that motion.

On February 2, 1931, the McEwens filed a petition for a rehearing upon the grounds that the decree was not supported by the evidence, the bill of complaint and contrary to law; that the mortgage secured only the payment of the note for ten thousand dollars and advances made subsequently and no such advances were shown by the evidence to have been made and on the grounds that taxing the expenses of the receivership was improper as the receivership was illegal. That petition was denied by order dated February 6, 1931.

On the second day of March, 1931, the defendants moved the Chancellor to fix the terms and conditions of the supersedeas bond and to stay the sale of the property by the Master which was advertised for that day. The Chancellor denied the motion.

The Master made his report on March 3, 1931. The report shows that the property was sold to the complainant for twenty thousand dollars and deed was executed by the Master. After paying attorney's fees and expenses which had grown to $11,320.85 there remained a balance of $8,679.15 to be applied upon the debt which by reason of interest from January 2, 1931, had grown to $25,189.04

leaving a balance due to the complainant of $16,518.89. The Chancellor by order dated the same confirmed the sale and report of the Master.

On the 7th day of April, 1931, the defendants McEwen entered another appeal from the final decree "and all orders and decrees entered in said cause previous to the entry of the final decree, and also from the decree of the Court confirming the foreclosure sale, and also from the decree of the Court denying the said defendants their application for attorney's fees." That appeal was made returnable to June 30, 1931.

Mr. Chief Justice Buford ordered that the appeal operate as a supersedeas of the "orders and decrees appealed from" upon appellants giving a bond the amount and conditions of which to be fixed by the order of the Circuit Judge. Following that order the defendants McEwen moved the court to fix the amount and terms of the supersedeas bond. The motion recited that complainant had acquired the Kunz mortgage, was subrogated to the rights of that mortgage; that the property which was sold had been shown by testimony and affidavits to be "worth from $125,000. to $140.000." and was therefore ample security for any lien that the complainant may have "by virtue of the mortgage sought to be foreclosed in this case." The court fixed the amount of the bond at $2,500. conditioned to pay all damages and losses which the appellee may sustain in the event the appeal should be dismissed or affirmed. The court denied a motion to reduce the amount of the bond.

On April 10, 1931, the Chancellor by order continued the services of the Receiver and directed him to retain possession of the property involved in the litigation for the purpose of preserving the property and protecting it and to receive the rents, issues and profits therefrom. It was recited in the order that existing conditions rendered it prudent as there was fruit upon the trees of the approximate value of ten thousand dollars which should be picked

and marketed within three months from the date of the order and that unless the citrus grove continues to receive the scientific care and cultivation usually practiced by citrus growers the security for the complainant's indebtedness would be inadequate; that both McEwen and his wife were insolvent and were financially unable to expend the money necessary to properly care for the grove. The order was filed on the 13th of April.

On April 15, 1931, the supersedeas bond was filed. On April 24, 1931, the defendants moved the court to discharge the Receiver whose services were continued by order of April 10th. Among the grounds urged were that they should give their personal attention to the care of the grove and the funds in the hands of the receiver should be turned over to them for that purpose; that the mortgaged property was worth double the amount of the debt and there was an opportunity to sell it. The motion was denied and an appeal was taken from that order and made returnable July 31, 1931.

So three appeals were taken in this case. The final decree directed the Master to sell the property and place the purchaser in possession. The master made his report that he had sold the property to the complainant and delivered a deed to it. That report was made March 3, 1931, and confirmed on the same day.

So the decree had been entered, the Special Master had sold the property and delivered a deed to the purchaser, reported the sale and disbursement of the proceeds and the court had confirmed the report and sale before the second appeal was taken and supersedeas obtained.

In view of the apparently deep interest which has been exhibited in this case by the learned counsel engaged in this cause, the many questions argued, the extent of their briefs and the unusually large record due to the great amount of testimony taken which we think was largely unnecessary in view of the pleadings, we have deemed it

prudent to make this very lengthy statement in chronological order of the progress of the suit and technic of its management. Many of the questions presented and argued we do not consider are involved in the cause.

In the first place, as there was an amended bill of complaint which contained in substance all the allegations of the original bill and a full explanation which was unnecessary for the purposes of the suit as to how the indebtedness alleged arose and as the only answer interposed was addressed to that bill the presence of the original bill in the record seems to have been unnecessary.

The mortgage sought to be enforced appears by a copy attached to the original and amended bills as Exhibit C. It was dated April 2, 1928, and was duly executed, acknowledged for record, and recorded on the 5th day of the same month. It acknowledged an indebtedness of ten thousand dollars evidenced by a promissory note of the same date. The purpose of the mortgage was to secure the payment of the promissory note for ten thousand dollars and all renewals or extensions thereof "as well as to secure the payment of any and all further loans and advances which may be hereafter made by the party of the second part (mortgagee) to the party (ies) (sic) of the first part, said loans and advances, including the note above described, however not to exceed at any time the sum of twenty-five thousand dollars ($25,000.00)."

The mortgage was given upon the express condition that the mortgagors would pay to the mortgagee its successors or assigns "the above described promissory note and any and all renewals of the same, or any part thereof, and also any and all other loans and/or advancements which may be hereafter made by the party of the second part to the said party (ies) of the first part, as herein before described, according to the tenor and effect thereof." The mortgagors expressly covenanted and agreed to pay the "sums of money and interest as mentioned in said promissory note

or notes and any and all renewals of the same, or any part thereof, and all other moneys hereinbefore described and secured to be paid as aforesaid and to pay all taxes and assessments that may be levied'' etc.

There is no question as to the validity of such provisions. In explanation of the note for fifteen thousand dollars dated June 8, 1928, a little more than two months after the date of the mortgage, the amended bill alleged that the greater part of that indebtedness existed prior to April 2, 1928, and was secured by a mortgage to complainant and the remainder was additional advances made after the mortgage of April 2, 1928; that a sufficient amount was loaned by the complainant to the defendant to pay off and discharge the former indebtedness and lien of the mortgage securing it and that supplemented by other advances amounted to fifteen thousand dollars evidenced by the note for that amount dated June 8, 1928.

A valid subsisting debt, according to the allegations of the bill, existed against the defendant secured by a mortgage lien upon his properties. If that debt had been due to a third person and the money advanced by the complainant mortgagee to pay and discharge it would it not be considered an advance under the provisions quoted of the mortgage sought to be enforced? Does it alter the situation that the debt was held by the complainant secured by a mortgage upon the identical properties covered by the mortgage sought to be enforced in these proceedings?

The rule which obtains in the absence of statute upon the subject is that a mortgage securing future advances need not contain a definite statement of the amount if described with reasonable certainty and within limitations so that they may be ascertained by the exercise of ordinary diligence on proper inquiry. See Shirras v. Caig, 7 Cranch 34, 3 L. Ed. 260; Collier v. Faulk, 69 Ala. 58; Jarratt v. McDaniell, 32 Ark. 598; Mix v. Cowles, 20 Conn. 420; Seymour v. Darrow, 31 Vt. (text 134) 122; Bell v. Fleming,

12 N. J. Eq. (text 13) 16; Summers v. Roos, 42 Miss. (text 779) 749, 2 Am. Rep. 653; Foster v. Reynolds, 38 Mo. (text 557) 553; Lawrence v. Tucker, 23 How. 27, 16 L. Ed. 475.

It has been held that parol evidence is admissible to show that a mortgage was intended to secure future advances. Johnson v. Bratton, 112 Michigan 319, (text 323), 70 N. W. Rep. 1021.

No question is involved here as to the equities of subsequent purchasers or lienees nor as to cases where liens attached before the advances were made.

The chancellor found for the complainant upon the issues presented by the pleadings. A careful examination of the evidence as reported does not reveal to this Court that the Chancellor clearly erred in his findings. Waterman vs. Higgins, 28 Fla. 660, 10 South. Rep. 97; Viser v. Willard, 60 Fla. 395, 53 South. Rep. 501; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Davidson v. Collier, 75 Fla. 783, 78 South. Rep. 983.

There is evidence to support the decree although there is conflict in the testimony. In such case the chancellor's findings and decree will not be reversed. See Lewter v. Price, 25 Fla. 574, 6 South. Rep. 439; Rosenthal v. First Nat. Fire Ins. Co., 74 Fla. 371, 77 South. Rep. 92; Turnipseed v. Brown, 102 Fla. 542, 136 South. Rep. 343; Lesnoff v. Becker, 101 Fla. 716, 135 South. Rep. 146.

The chancellor's findings therefore that the note for ten thousand dollars was a subsisting valid and unpaid debt except that part which was admitted to have been paid and that the note for fifteen thousand dollars consisted largely of sums advanced to pay a preceding or prior debt secured by a mortgage upon the property and in part for other advances made to the defendant and was a valid and unpaid debt due by the defendant will not be reversed.

We also hold that the mortgage was broad enough and definite enough in its terms to embrace the money advanced

by the complainant to the defendant to discharge and pay the prior debt and lien and that it was a valid contract. See Sec. 5741 C. G. L. 1927, Chap. 10279, Acts 1925; Summerlin v. Orange Shores, Inc., *supra.*

We perceive no merit in the contention of appellants based upon the so-called trust relationship existing between the mortgagors and mortgagee created by the terms of the mortgage. Whatever may have been the mortgagee's rights as to the management of the property and the marketing of the fruit before default the fact remains that no receiver for the property was sought or appointed until after default and the filing of a bill in chancery to enforce the security. Even though the provisions of the mortgage are extraordinary and full there is nothing invalid in such provisions that we discover nor are we favored by reference to any authority to show that such provisions would destroy the security provided by the terms of the mortgage for the payment of the debt.

As said by Mr. Justice Brown, speaking for the Court, in an able opinion in the case of Carolina Portland Cement Company, v. Baumgartner, 99 Fla. 987, 128 South. Rep. 241, ''While it is our statutory policy to leave the mortgagor in possession until after foreclosure and sale, and equity will enforce this policy until it becomes necessary to subordinate the mortgagor's possession in order to protect the equitable rights of the mortgagee, yet when the mortgage expressly gives a lien upon the rents and profits and consents to the appointment of a receiver upon default, such stipulation should be accorded considerable weight by the courts, and will in many cases afford good grounds for the appointment of a receiver where without them a receiver might not be appointed.''

The mortgage in this case provided that the mortgagee may for the protection of its interests have the citrus fruits picked, packed and marketed at any time and that if default should be made in the payment of the money

due as it shall become due then the mortgagee may declare all the sums of money secured as immediately due and payable and to foreclose the mortgage for the same and in such "foreclosure suit proceeding the party of the second part shall be entitled without notice to the party (ies) (sic) of the first part to the appointment of a receiver to take charge of the property hereby mortgaged and to gather, pack, ship and market said citrus fruit through said Citrus Growers Association." The mortgagees did not undertake to exercise any control over the property prior to default in the payment of the debt although it was provided that the mortgagor should care for and cultivate the trees and give them all the care needful at his expense for the production of a good merchantable crop and to insure the property against loss or damage by hail, windstorm, frost or freeze and in the event of his failure to do so the mortgagee was authorized to enter upon the lands for the purpose of cultivating and harvesting any or all of said fruit crops and to so insure said crops.

There was no error in the appointment of the receiver nor could the continuation of his services after the sale of the property to complainant, appellee here be cause of complaint by the mortgagor.

There was no error in the admission of evidence by which the indebtedness was established. See 41 C. J. 467; Lee v. Fletcher (Minn.) 12 L. R. A. 171.

It does not appear by what process the mortgagee acquired possession of the property after the sale of the premises and delivery of deed to the purchaser and confirmation of the sale and report of the master by the court but in any event restitution of possession by the appellants to the appellee should be made and it is so ordered.

The decrees and orders appealed from are affirmed.

BUFORD, C.J. AND BROWN, J., concur.

196

WHITFIELD, P.J. AND DAVIS, J., concur in the opinion and judgment.

TERRELL, J., not participating.