E. C. FITZ & COMPANY, INC., v. J. E. ELDRIDGE

176 So. 539.

Division A.

Opinion Filed October 23, 1937.

*Phillips & Thompson,* for Plaintiff in Error.

*Baker & Ulmer,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judg-

ment in favor of the defendant in an action for conversion of personal property.

The record shows that on June 29, 1925, A. N. Dillard executed a purchase money mortgage on a ten-acre citrus grove located in Pinellas County, Florida, to one J. D. Baskin. Baskin later assigned the mortgage to J. E. Eldridge, who was the defendant in this suit. The mortgage and notes which it secured became in arrears.

After default for a long period, Dillard, on May 10, 1933, executed a crop mortgage to E. C. Fitz & Co., Inc., to secure an indebtedness which he owed. Bill was filed to foreclose the real estate mortgage on January 24, 1934, and on the same date *lis pendens* was filed covering the lands described in the crop, or citrus fruit, mortgage.

On May 28, 1934, stipulation was entered into between the parties, as follows:

"J. E. Eldridge, Complainant, v. A. N. Dillard, *et al.*, Defendants.

"Mortgage Foreclosure.

"STIPULATION

"It is hereby stipulated by and between the complainant J. E. Eldridge and the defendants A. N. Dillard and his wife, Elsie H. Dillard, through their respective solicitors that the said defendants hereby withdraw their motion to dismiss heretofore filed herein, and hereby consent for the court to make and enter a decree *pro confesso* against them and each of them, and hereby further agree that the said cause may proceed to decree *ex parte* so far as they and each of them are concerned.

"Witnesseth that we have caused said stipulation to be signed by our respective solicitors, this the 28th day of May, 1934.

"Jos. W. Nichols, Solicitor for Complainant.

"Baskin & Jordan, by Ralph Richards, Solicitors for Defendants."

There is substantial evidence to show that on the same date, May 28, 1934, Dillard surrendered possession and control of the entire property to Eldridge and thereafter was not in possession or control of either the land, the trees or the crop.

On May 30th Dillard and wife executed a bill of sale purporting to cover the fruit then on the trees on the lands upon which the real estate foreclosure was being accomplished. He transmitted that bill of sale to E. C. Fitz & Company, Inc., by mailing the same on June 5th, 1934, which was one day after decree of foreclosure had been entered in favor of Eldridge. Eldridge acquired title under master's deed of July 3, 1934.

We think that this case is controlled by the opinion and judgment in the case of Summerlin v. Orange Shores, Inc., et al., 97 Fla. 996, 122 Sou. 508, although the real estate mortgage here under consideration was executed a few days subsequent to the time when Section 5741 C. G. L., Chapter 10,279, Acts of 1925, became effective while the mortgage in the Summerlin case was executed prior to that enactment. In that case this Court, speaking through Mr. Justice Ellis, said:

"The mortgage of products grown upon a farm, however, was invalid as a chattel mortgage if made before the preparation for the yearly crop began. Long v. Hines, 40 Kan. 220, 19 Pac. R. 796, 10 A. S. R. 192; Hutchinson v. Ford, 9 Bush. (Ky.) 318, 15 Am. R. 711; New Lincoln Hotel Co. v. Shears, 57 Neb. 478, 78 N. W. R. 25, 73 A. S. R. 524, 43 L. R. A. 588; Loftin v. Hines, 107 N. C. 360, 12 S. E. R. 197, 10 L. R. A. 490; Rochester Dist. Co. v.

Rasey, 142 N. Y. 570, 37 N. E. R. 632; 40 Am. St. Rep. 635.

"But under the statute in this State, Sec. 5741 Comp. Genl. Laws 1927, valid mortgage liens may be created upon agricultural, horticultural or fruit crops then planted, growing, or to be thereafter planted, grown or raised, provided that the lands upon which said crops are grown or raised, or are to be thereafter grown or raised, are fully described in said mortgage. Prior to the enactment, however, of that statute the Duggar-Peabody mortgage, which complainant seeks to foreclose, was executed and became a lien upon the trees and fruit thereon, which not being severed in fact or by law passed with the realty as a part of it.

"The above quoted statute cannot be interpreted literally because it is obvious that a mere lessee of land for a term of years could not make a valid chattel mortgage of crops to be grown by another upon the land during a year beyond the term of his lease even if the land was fully described in the mortgage. Nor do we think that a valid chattel mortgage could be given upon fruits for an indefinite period of time extending over years operating to give a superior lien over a prior mortgage upon the lands so as to subject the fruit, which has not yet begun in its maternal flower to form the first stage of its production, to a superior lien of the chattel mortgage. The mortgage could only attach, if valid at all, to such interest as the mortgagor had in the crops at the time they come into being. See Christianson v. Nelson, 76 Minn. 36, 78 N. W. R. 875, 79 N. W. R. 647; Hall v. State, 2 Ga. App. 739, 59 S. E. R. 26."

And, in the same opinion, it is said:

"We hold that before default in the payment of the debt secured by the first mortgage the owner may give a chattel

mortgage upon the fruit *in esse* and on default in such mortgage the mortgagee may take possession under provisions like those contained in the so-called chattel mortgage, but that the. owner cannot create a lien superior to the first mortgage upon the land by attempting to mortgage fruit not yet in existence and which does' not come into existence until after default in the first mortgage and proceedings to foreclose the same."

It will be observed that in this case default had occurred as to the real estate mortgage before the crop, or fruit, mortgage was executed, and before the 1934 crop of citrus fruit had started into being by bloom, proceedings had been instituted to foreclose the real estate mortgage in default. So, under the rule stated in the Summerlin case, *supra,* the purported crop or fruit mortgage was not effective to create a lien as to the 1934 crop superior to the lien created by the mortgage on the real estate.

The question then arises whether or not the bill of sale of May 30, 1934, executed by Dillard and wife to E. C. Fitz & Company, Inc., but which was not deposited in the mail for transmission to E. C. Fitz & Company, Inc., until June 5th, one day after final foreclosure had been entered, and which was executed subsequent to the stipulation filed in the foreclosure case that such decree should be so entered and subsequent to a time, to-wit, the 28th day of May, when (as is shown by substantial evidence, though there was evidence to the contrary) Dillard had surrendered possession and control of the entire property to Eldridge, was effective to convey the fruit crop to E. C. Fitz & Company, inc., and to pass to E. C. Fitz & Company, Inc., either possession or right of possession to the crop of fruit which was the property alleged to have been converted by the defendant Eldridge.

There is sufficient showing that the bill of sale was given without present consideration but in part payment of an existing obligation. Therefore, regardless of any question of notice, it can convey to E. C. Fitz & Company, Inc., no right superior to, or greater than, that which was then lodged in Dillard. It is implied from the judgment rendered by the Court (and this case was tried as to law and fact by the Court, a jury having been waived) that Dillard neither had possession nor right of possession of the crop of fruit at the time he transmitted the purported bill of sale to E. C. Fitz & Co., Inc. There is ample evidence in the record to support such finding.

For the reason stated, the judgment should be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.