PIERCE, Judge.
This is an appeal from a final judgment ■against appellants N. G. Bryan and Lillian Y. Bryan, his wife, and John J. Nedza, defendants below, in a quiet title action.
During the pendency of a prior mortgage foreclosure action by the appellee First National Bank of Wauchula, a U. S. corporation, plaintiff below, against the Bryans and after a final judgment had been entered for the bank, but prior to the clerk’s sale, the Bryans executed and delivered to their attorney Nedza, as his fee, a crop lien on the existing crop of fruit on the property in question. The bank then filed its quiet title action against the Bryans and Nedza, alleging that it was the owner of the crop of fruit on the trees and that the crop lien was void. The Court entered its final judgment voiding the crop lien and declaring the bank to be the owner of the crop of fruit in existence. From this judgment the Bryans and Nedza have appealed.
On December 28, 1964, the Bryans executed and delivered to the bank a note for the sum of $17,000.00, to secure the payment of which they gave a real estate mortgage encumbering an orange grove owned by them. The note and mortgage required annual payments of $3,400.00, plus interest, commencing December 28, 1965. The Bryans did not make the payment due on December 28, 1965, but paid only the sum of $1,000.00 plus interest. No further payments were made on the note and mortgage.
On July 15, 1966, the Bryans executed to Florida Orange Marketers, Inc. a crop lien encumbering the then existing crop of fruit and all future crops of fruit until a sum of money advanced by Florida Orange Marketers to the Bryans was paid.
On June 22, 1967, the bank filed its mortgage foreclosure suit against the Bryans and Florida Orange Marketers. After Florida Orange Marketers filed its answer and defenses the bank requested the Court to strike Florida Orange Marketers as a party defendant, setting forth that Florida Orange Marketers held a lien superior to that of the bank.[1]
Final judgment in foreclosure was rendered on September 19, 1967; and on October 11, 1967, six days before the foreclosure sale, the Bryans executed and delivered to Nedza the crop lien in question.
The Bryans and Nedza contend that a real property mortgage does not encumber the fruit crops unless the crop is specifically described and included in the mortgage, citing Hughes v. Summit Realty Company, 1935, 120 Fla. 136, 162 So. 343. They further submit that the bank did not seek to extend the lien on its mortgage to embrace the crops by asking the Court to impress the crops with an equitable lien incident to its foreclosure proceedings, and cite Haines City Citrus Growers Association v. Petteway, 1932, 107 Fla. 344, 145 So. 183, to support this contention. They argue that in order to have acquired the crops the bank must have taken one of these steps. We cannot agree with such conclusion.
The rule in Florida is, as we see it:
“Crops of fruit growing on trees, whether regarded as fructus naturals or fructus industrials, are in general parts *131 of the realty, and, unless reserved, go with the realty in its transfer. But by the acts and intention of an owner of land containing bearing fruit trees the growing fruit may be converted into personalty for purposes of sale.”
See Simmons v. Williford, 1910, 60 Fla. 359, 53 So. 452; Summerlin v. Orange Shores, Inc., 1929, 97 Fla. 996, 122 So. 508; E. C. Fitz & Co., Inc. v. Eldridge, 1937, 129 Fla. 647, 176 So. 539; Adams v. Adams, 1946, 158 Fla. 173, 28 So.2d 254; Peer v. Willson, Fla.App.1968, 210 So.2d 495.
The Crop Lien Act, Chap. 10279, Acts of 1925, shown in the compilations as F.S. § 700.01 et seq., F.S.A., provides, among other things, that “valid mortgage liens may be created upon * * * fruit crops” so long as the holder of the fee complies with the provisions of the act.[2] In Summerlin v. Orange Shores, Inc., supra, the real estate mortgage involved was executed prior to the effective date of the Crop Lien Act. The crop lien, or chattel mortgage, was given after the passage of the Crop Lien Act and provided that the lien should apply to the 1926-27 season and subsequent crops until the indebtedness was fully paid. The fruit crop in controversy was the 1927-28 crop, which had not yet begun its “maternal flower to form the first stage of its production,” when default occurred in the real estate mortgage. The Court said:
“We hold that before default in the payment of the debt secured by the first mortgage the owner may give a chattel mortgage upon the fruit in esse and on default in such mortgage the mortgagee may take possession under provisions like those contained in the so-called chattel mortgage, but that the owner cannot create a lien superior to the first mortgage upon the land by attempting to mortgage fruit not yet in existence and which does not come into existence until after default in the first mortgage and proceedings to foreclose the same.” (Emphasis supplied).
In the case of E. C. Fitz & Co., Inc. v. Eldridge, supra, which involved a real estate mortgage executed after the effective date of the Crop Lien Act, a crop mortgage was executed on May 10, 1933, by the mortgagors, Mr. and Mrs. Dillard, to E. C. Fitz & Co., Inc. Default had occurred in the real estate mortgage long before the execution of the crop mortgage, and proceedings had been instituted to foreclose the real estate mortgage before the 1934 crop of citrus fruit had started into being by bloom. The Court held that the crop mortgage was not effective to create a lien as to the 1934 crop superior to the lien created by the real estate mortgage, and followed the rule laid down in the Sum-merlin case, supra.
In Haines City Citrus Growers’ Ass’n v. Petteway, supra, cited by appellants, the crop mortgage was executed prior to execution of the real estate mortgage and therefore necessarily before any default had occurred in the real estate mortgage.
In the Hughes case, supra, also cited by appellants, while the Court said that since the enactment of the Crop Lien Act a mortgagee has no reason to rely on the citrus crops to pay his mortgage, unless it is so specified in the mortgage, it held:
“In the case at bar none of the notes of the mortgagee were in default when the crop lien was executed and the fruit was well on the road to maturity. In this state of the record appellee was within his right in mortgaging his crop for the year and until his note was fully paid.”
In the instant case the crop lien was executed and delivered to Nedza long after a *132 default had occurred in the real estate mortgage and after a final judgment had been entered against the mortgagors in the real estate foreclosure action. The record also shows that the real estate mortgage was in default before the citrus fruit purported to he encumbered by the crop lien had come into bloom. We, therefore, hold that the crop lien held by Nedza was ineffectual as against the bank.
Affirmed.
LILES, C. J., and MANN, J., concur.

. The reason for this concession of superiority by the bank is not disclosed by the record; however, it does not operate to the appellants’ prejudice as to the latter lien, which stands on its own bottom.

. The Uniform Commercial Code, which repealed §§ 700.01-3 F.S. became effective on January 1, 1937, and applies to transactions entered into and events occurring after that date. Both the real estate mortgage to the bank and the crop lien to Florida Orange Marketers, Inc. were executed before January 1, 1967, and therefore the Uniform Commercial Code is not applicable here.