CARROLL, DONALD K, Judge.
In this mortgage foreclosure suit the respondent in an injunction proceeding that had been filed in the suit has appealed from an order entered by the Circuit Court for Walton County enjoining him from removing a corn crop from the land covered by the mortgage.
After a final decree of foreclosure had been entered by the court, the land in question was sold at the foreclosure sale to one Hubert Bell, who then filed a petition in *867 the cause against one Woodrow Gillis as the respondent, alleging that Gillis had been harvesting, severing, and removing from the said land a crop of corn, and praying for an injunction to restrain Gillis from entering the land and acting upon any property constituting a part of the real estate. In his answer to the petition Gillis alleged that he was in possession of the land under a claim of right and also was in possession with the consent of the owners of the land. Gillis also alleged that the said crops are “fructus industriales, chattels, emblements, personal property and belong to Woodrow Gillis who was in lawful possession of the land and crops at the time of the foreclosure sale and do not pass to the purchaser of the land at such sale as part of the realty.”
The record shows the following additional facts that are pertinent to the present consideration:
On October 31, 1961, Gillis had paid a .down payment and secured a sale-purchase agreement from the defendant Milo Stoltz-fus to purchase the land for $10,600 on or before February 1, 1962. Gillis had farmed the land in 1961 and 1962 with the consent of the owners.
On November 20, 1962, the certificate of title to the land was issued to Hubert Bell. At this time Gillis’ crop had matured and had been partially harvested. According to Gillis, Bell, who lived on adjoining land, knew that he, Gillis, was growing corn on the subject land.
On December 14, 1962, the court entered the order appealed from, enjoining Gillis from entering upon the land and removing any crops, fence wire, or other property attached to the realty. In the order, however, the court permitted Gillis within 30 days to enter upon the land for the sole purpose of removing therefrom certain hay and beans, and to retain in his custody the corn severed and removed from the land before November 20, 1962.
The chief point raised by the appellant is whether in the said order the court erred in adjudging that the unsevered and unre-moved corn crop belongs to Bell as the new owner of the land.
While there are many incompatible rulings in other jurisdictions, the Supreme Court of Florida has carefully and clearly delineated the nature of different kinds of crops as personalty or realty.
In the case of Summerlin v. Orange Shores, Inc., 97 Fla. 996, 122 So. 508 (1929), the Supreme Court laid down the applicable, rules as follows: •
“ 'Growing trees, fruit, and grass, which are the natural product of the earth, growing spontaneously and without cultivation, are parcel of the land, and, as part of it, descend with it to the heir. Until severed from the land, growing trees, fruit, and grass cannot be seized as chattels upon execution. They are within the Statute of Frauds, and cannot be sold or conveyed by pa-rol; nor can any valid agreement for their sale be made, except by an agreement in writing. On the other hand, annual products of the earth, such as crops of grain and vegetables, which are the result of yearly labor and cultivation, are chattels while still growing, and as such go to the executor rather than the heir. They may be seized on execution as chattels, and may be sold or bargained by parol. In other words, crops which grow only by yearly cultivation are chattels, in contemplation of law, though not severed from the land; but trees and grass, and all other natural products of the earth, are parcel of the land until actually severed from it, or until so severed in contemplation of law.’ See Jones on Chattel Mortgages 145; Bank of Lansingburgh v. Crary, 1 Barb. (N.Y.) 542; Crosby v. Wadsworth, 6 East. 602; Carrington v. Roots, 2 Mee. & W. 248; Rodwell v. Phillips, 9 Mee. & W. 501; Wintermute v. Light, 46 Barb. (N.Y.) 278; Parker v. Staniland, 11 East. 361; *868 Jones v. Flint, 10 Ad. & E. 753, 37 Eng. Com.Law 217.”
Our Supreme Court in the later case of Adams v. Adams, 158 Fla. 173, 28 So.2d 254 (1946) summarized the rules in this manner:
“Crops of fruit growing on trees, whether regarded as fructus naturales or fructus industriales, are in general parts of the realty, and, unless reserved, go with the realty in its transfer. But by the acts and intention of an owner of land containing bearing fruit trees the growing fruit may be converted into personalty for purposes of sale.”
Among other Florida Supreme Court cases generally recognizing the same rules are Gentile Brothers, Inc. v. Bryan, 101 Fla. 233, 133 So. 630 (1931), Haines City Citrus Growers Association v. Petteway, 107 Fla. 344, 145 So. 183 (1932), McKenna v. State, 119 Fla. 576, 161 So. 561 (1935), and Hughes v. Summit Realty Co., 120 Fla. 136, 162 So. 343 (1935).
A succinct summary of the Florida holdings is found in 9 Fla.Jur., Crops, Section 3, page 340, as follows: “With reference to crops which are considered to be fructus naturales, and crops which are considered to be fructus industriales, in general it is held that the latter are chattels, while the former are a part of the realty and continue to be so until severed from the freehold.”
There can be no question in the instant case that the crops grown by Gillis on the land covered by the mortgage belong in the category of crops which grow only by yearly cultivation and are not products of the earth like trees and grass; that his crops are “fructus industriales” and not “fructus naturales”; and that his crops are not like fruit grown on trees. We are therefore bound to categorize Gillis’ crop as personal property which was not covered by the real estate mortgage and which belonged to Gillis and not to Bell, the new owner of the land.
That part of the order appealed from restraining Gillis from entering the land and removing the crops and that part of the order permitting Gillis to retain in his custody only the corn severed and removed from the land prior to November 20, 1962, are reversed; the said order is otherwise affirmed; and tha cause is remanded for further proceedings consistent with the views expressed herein.
Affirmed in part and reversed in part, and remanded.
STURGIS, C. J., and RAWLS, J., concur.