BOOTH, Chief Judge,
dissenting:
I would affirm the summary judgment entered below, which judgment is, in pertinent part, as follows:
Based upon the undisputed facts of record the Court finds as a matter of law that the agreement between COASTAL and Fathaly for the sale of the timber constituted a present sale of “goods” pursuant to the provisions of Section 672.107(2), Florida Statutes and title to the goods (here, timber) vested in COASTAL at the time the agreement with Fathaly was entered. By withholding his mortgage from record during the period of time that COASTAL negotiated the purchase of the timber from Fathaly, KONAS is now estopped from claiming that his subsequently recorded mortgage encumbered the timber previously sold to COASTAL. Since COASTAL had no actual or constructive notice of the unrecorded mortgage, it took ownership of the timber free and clear of the mortgage. Likewise, the Lis Pendens subsequently filed by KONAS in his foreclosure proceeding against Fathaly had no effect on the timber on Violetta Farms since it had been sold to COASTAL several months earlier.
I dissent from the reversal of the judgment quoted above and from the majority’s view of the Uniform Commercial Code (UCC) as requiring such a result. The material facts are as stated in the majority opinion; however, I would emphasize that at the time the timber sale took place, the mortgage to Konas had not been recorded and Coastal had no notice, actual or implied, of its existence; that Konas’s mortgage was not recorded at the time Coastal took title as a bona fide purchaser and became obligated to pay the purchase price; and by the time the mortgage was recorded in May of 1980, the contract had been partially performed.
Section 672.107(2), Florida Statutes (1979), provides that a contract for sale of timber to be cut is a contract for the sale of goods and provides that the “parties can by identification effect a present sale before severance.”[1] The trial court found a present sale of the timber.[2] I agree.
Moreover, no security interest under the UCC was created in the timber either by the mortgage or by the sale. Chapter 679, Florida Statutes, relating to secured transactions is therefore inapplicable.[3] This case does not turn on questions of priority between parties having a “secured interest” in goods under Chapter 679; neither party has such an interest.
It is a basic premise of Article 9 of the UCC that the parties must have intended to create a security interest in order that there be one. Section 679.102, Florida Statutes, so states and sets forth the transactions and contracts to which that chapter applies. Notable for its omission from that section is any reference to a simple “contract of sale,” a recognized term under the UCC. Obviously, not all transactions and contracts subject to Chapter 672 (Sales) are also subject to Chapter 679 (Secured Transactions) and not every timber transaction creates a security interest. Sections 672.-107(2) and (3), Florida Statutes, allowing immediate sale of timber as goods, make no reference to security interests. The “sponsors’ note” following this section cannot be relied on to “create” a security interest in all timber sales; rather, it recognizes that a security interest may arise and, if it does, filing as for fixture filings is required pursuant to Part IV, Chapter 679.
Turning to the mortgagee’s (Konas’s) interest, Konas claims a security interest in the timber and further assumes that the recording of his mortgage perfected a se *872 curity interest under Chapter 679. However, the record below contains no evidence that the parties to the mortgage intended to create a security interest in the timber. On the contrary, the failure of the mortgage to refer to the timber is evidence that the parties did not so intend. This, coupled with the evidence that the owner planned to put the land in pasture and olive tree groves, requiring the land be cleared of timber, indicates a lack of intent to have the timber serve as collateral under the UCC.
If in fact a security interest in the timber was created by the mortgage given by Fa-thaly to Konas, then that interest had to be perfected under Chapter 679, and recording of the mortgage was not a “filing” as required by that Act.[4] The mortgage in the instant case is not an acceptable financing statement (e.g., no description of collateral, no signature of secured party) and even had it been filed, it would not have been sufficient as perfecting an interest under the UCC. Sections 679.402 and 679.-203, Florida Statutes.
There is no UCC security interest in the timber, and this case is controlled by the law of sales and the doctrine of constructive severance. Distinctions between crops and timber, as to severance, were removed by the 1979 amendment, and both are now “goods.” Section 672.107(2), Florida Statutes. Florida cases dealing with the sale of citrus, decided under the UCC prior to the 1979 amendment, now pertain equally to the sale of timber.[5] In The Exchange National Bank of Tampa v. Alturas Packing Company, 269 So.2d 733 (Fla. 2d DCA 1972), the court held that a landowner’s sale of his growing citrus crop constituted a constructive severance of the crop from the realty at the time of contracting so that a creditor’s subsequent levy upon the land and recording did not include the crop. And in Bornstein v. Somerson, 341 So.2d 1043 (Fla. 2d DCA 1977), cert, denied, 348 So.2d 944 (Fla. 1977), the court held that an agreement entered into for the sale of a citrus crop prior to a mortgagee’s foreclosure was a present sale, constructively severing the fruit from the realty. This result was reached even though the land on which the *873 fruit trees were growing was encumbered by a real estate mortgage. The court noted that the mortgagee could have perfected a security interest in the crop by following the applicable provisions of the UCC.
In The Exchange National Bank, supra, the crop sale occurred prior to the attachment of the realty by the bank, but was upheld as a present sale under Chapter 672. Ruling in favor of the purchaser of the crop, the court held:
It is contended by appellees that the sale of the citrus crops prior to notice of attachment constituted a constructive severance of the fruit crops from the realty, and that subsequent levy on the lands alone, without reference to the citrus crops growing thereon, did not include such citrus crops. Therefore, since the notice of levy did not include the citrus crops, such notice of levy was restricted to the land itself, the crops having been previously constructively severed.
It is our view that Section 672.107(3) as presently worded does not require the recording of a sale of citrus fruit in order to provide constructive notice to others of the nature of the buyer’s interest in the crop.
It is our further view that the sale of the citrus crops to the respective appel-lees constituted a constructive severance of the crops from the land.
Constructive severance was defined and applied in Bornstein, supra at 1046, as follows:
It is axiomatic that in Florida crops of fruit are in general parts of the realty until severed, [citations omitted] However, by acts or intention of the owner, growing fruit may be constructively severed and thus converted into personalty for the purposes of mortgage or sale, even though the fruit remains on the trees, [citations omitted] Thus a sale or mortgage of the fruit, even though under a general mortgage of the realty, effectively removes the fruit from the realty and out of reach of the mortgagee unless the latter provides otherwise. The parties agree that the sale of the tangerines, pursuant to the supplemental contract, fell within this latter category as a constructive severance. Additionally, no dispute exists as to whether Born-stein explicitly reserved any rights to future fruit crops on the mortgaged land. He did not.
The doctrine of constructive severance on present sale of growing crops is alive and well in Florida under the UCC. In Bornstein, supra, at page 1046, footnote 7, the court considered the fact that the mortgage reserved “rents, issues and profits” but did not reserve a lien on future fruit crops, and held (341 So.2d at p. 1046, n. 7):
The mortgagee could have reserved a security interest in the citrus crops to be harvested subsequent to July 1, 1973. §§ 679.9-203, 679.9-204 Fla.Stat. (1975) provide a mechanism whereby Bomstein could have obtained a lien on the future crops as collateral for outstanding indebtedness. Properly identified, this security interest could have remained effective even after sale of crops and during foreclosure proceedings....
In the instant case, as in The Exchange National Bank and Bornstein cases, supra, the creditor of the landowner claimed a secured interest in crops or timber based on an instrument that did not describe the claimed collateral, and there was no filing as required by Chapter 679. Regardless of what the result might have been at common law, it now appears, as previously stated, that interests in crops and timber are not covered by a general real estate mortgage and even a recorded mortgage will not protect against an intervening sale or security interest[6] in the absence of filing under the UCC.
Konas cannot prevail for a number of reasons. First, the sale of the timber did not create a security interest under Chapter 679. Second, Konas did not perfect an interest in the timber as required by the UCC and cannot claim priority under Chap *874 ter 679. Third, Konas’s belated compliance with the Florida recording statute, Section 695.01, does not give the mortgage priority over the intervening sale to a bona fide purchaser for value and without notice. Fourth, and perhaps most basic, the principle of estoppel, expressly preserved under Section 671.103, Florida Statutes, is applicable. When all is said and done, it is apparent that it was Konas, and not Coastal, who had the opportunity and duty to properly give notice of his claim, if any, of a security interest in the timber. This Konas failed to do, setting the stage for the unsuspecting purchaser of the timber who, by the majority view, must now pay twice for the timber.
I respectfully dissent.

. Sufficiency of identification of the subject matter of the timber contract (testified to be all the timber on Violetta Farm) is not at issue.

. Section 672.106(1): “A ‘present sale’ means a sale which is accomplished by the making of the contract.”

. 79 C.J.S.Supp. 79 Secured Transactions § 29 at 32: "The filing requirements of Chapter 679 do not apply to arrangements which do not create security interest.”

. Bornstein v. Somerson, 341 So.2d 1043, 1046, n. 7 (Fla. 2d DCA 1977), quoted infra; see National Bank of Sarasota v. Dugger, 335 So.2d 859 (Fla. 2d DCA 1976), holding that a recorded mortgage on motel property, covering realty, fixtures and personalty, did not have priority over a subsequent mortgage on the same property where the second mortgagee was the first to perfect his security interest by filing a financing statement; Henson, Secured Transaction p. 141 (1978):
[T]he Code follows general pre-Code law in recognizing crops as goods which may be the subjects of sales or security interests apart from the land on which they are growing. It would seem to be clear that a real estate mortgagee who intends to claim an interest in crops which has priority over subsequently granted security interests in the crops as personalty will have to comply with Article 9 requirements as to filing. (The real estate mortgage may be sufficient as a security agreement.) n. 60:
A security agreement covering crops or timber to be cut is required to contain a description of the land concerned, in addition to describing the collateral. This is a statute of frauds provision, and compliance is necessary for the security interest to be enforceable against the debtor or third parties. [Section] 9-203(l)(b), Revised [Section] 9-203(l)(a). A real Estate mortgage would meet this requirement of a security agreement and it would be "signed” by the debtor, but it would not be signed by the secured party as is normally required in the case of a financing statement under [Sections] 9-402(1) and (2) but not under Revised [Section] 9-402(1). A real estate mortgage might or might not have the addresses of the parties required by [Section] 9-402(1). Under [Section] 9-110 any description of real estate is sufficient "if it reasonably identifies what is described." This conforms to pre-Code requirements for chattel mortgages on crops which, since they were not filed in the real estate records, did not usually contain meticulous descriptions of the land on which the crops were to be grown or were growing.

. The pre-Code law of Florida viewed citrus as more aligned to timber (fructus industriales) than to general crops (fructus naturales) and therefore realty rather than personalty. Stoltzfus v. Covington County Bank, 154 So.2d 866 (Fla. 1st DCA 1963). Parol agreements for cutting of timber were upheld, however, under pre-Code law. 35 Fla.Jur.2d Logs and Timber Section 8.

. National Bank of Sarasota v. Dugger, 335 So.2d 859 (Fla. 2d DCA 1976).