388 So.2d 261 (1980)
Paul W. LEFFLER and Meredith Enterprises, Inc., Appellants,
v.
Earl M. SMITH and Ruth A. Smith, His Wife et al., Appellees.
No. 79-1489/T4-640.
District Court of Appeal of Florida, Fifth District.
August 27, 1980.
Rehearings Denied October 6, 1980.
*262 Phillip H. Logan of Shinholser, Logan & Moncrief, Sanford, for appellant Leffler.
Fred M. Johnson and Baya Harrison, III, of Fuller & Johnson, P.A., Tallahassee, for appellant Meredith Enterprises, Inc.
William M. Rowland, Jr., of Rowland, Bowen, Thomas, Bruggeman & Brown, P.A., Orlando, for appellees.
COBB, Judge.
Meredith Enterprises, Inc., and Paul Leffler appeal from a final judgment in favor of the Smiths, as representatives of a class of property owners, declaring the existence of a recreational easement in favor of the property owners, over two lots in Meredith Manor, and ordering Meredith Enterprises and the Lefflers to remove fences placed on those lots and enjoining their interference with the property owners' recreational easement in the future.
Inez Meredith originally owned a large parcel of land in Seminole County. In 1953 she caused a portion of the land to be platted as the Gene Gables Section of Meredith Manor. Block "E" consisted of six lots on Lake Brantley. She conveyed 26 of the 29 lots platted to Meredith Enterprises. The 1953 deed contained the following critical language:
5. All of Lot 1, Block "E", is reserved for the exclusive use of resident property owners of record as a park and bathing beach.
In 1954, Inez Meredith platted an additional portion of her land, 73 lots recorded as Nob Hill Section, Meredith Manor. Lot 15, Block "A", fronts Lake Rena. Thereafter, Inez Meredith conveyed to Meredith Enterprises all of the lots in the Nob Hill Section. Between 1954 and 1976, Meredith Enterprises sold many of the lots in the Gene Gables and Nob Hill Sections of Meredith Manor. In approximately fifty-one of those deeds there is language to the effect that the grantees therein are to have the use and privilege of all "resident only parks and beaches" or language of similar import. The trial court found that in its dealings and negotiations with potential purchasers, Meredith Enterprises held out and represented to potential purchasers that Lot 1, Block "E", of the Gene Gables Section (the Lake Brantley lot) and Lot 15, Block "A", of the Nob Hill Section (the Lake Rena lot) were set aside for the use of residents of the development: the Lake Brantley lot for park and bathing use, the Lake Rena lot for boat ramp use. The Meredith Manor property owners used Lot 1, Block "E" on Lake Brantley as a park and bathing beach until 1977. In August of 1976, Meredith Enterprises sold to defendant Leffler all of Lot 1, Block "E", except the south 50 feet. In the spring or summer of 1977, the Lefflers enclosed their portion of the lot with a fence. In addition, the residents of Meredith Manor used Lot 15, Block "A", on Lake Rena until Meredith Enterprises erected a fence in 1977.
The trial court found that Inez Meredith intended to give to the resident property owners of the Gene Gables Section of Meredith Manor the use of Lot 1, Block "E", as a park and bathing beach. The trial court found that Meredith Enterprises ratified the intent of Inez Meredith when it placed language in many deeds to property owners of the Gene Gables Section of Meredith Manor referring to the earlier grant of the park and beach areas to resident property owners. In addition, the trial court found that Meredith Enterprises gave the property owners the use of Lot 15, Block "A", as well. The trial court held that the grantor's intent would prevail over the ancient common-law rule that a reservation in a third party, not a party to a deed, is invalid.
*263 As to Lot 1 on Lake Brantley, appellants argue that the reservation in the 1953 deed was invalid under the common-law rule that prohibits a reservation in favor of a stranger to a deed. The common law of England down to the 4th day of July, 1776, is in force in this state unless inconsistent with the constitution and laws of the United States and the acts of the Legislature of this state. § 2.01, Fla. Stat. (1979). However, it is not necessary now to determine the continued vitality of this ancient rule. Cf. Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941).
We uphold the result reached by the trial court, on the ground that appellants, Meredith Enterprises, and its successor in interest, Leffler, are estopped from questioning the validity of the reservation.
Legal estoppel or estoppel by deed is defined as a bar which precludes a party to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted therein.
Cook v. Katiba, 190 So.2d 309, 311-312 (Fla. 1966).
In Dade County v. Little, 115 So.2d 19 (Fla. 3d DCA 1959), the court applied the doctrine of estoppel by deed to a conveyance containing a reservation of a right of way to the state in a deed from a drainage district. The court held that the present landowners were estopped from claiming the reservation was ineffective where the deed was of record at the time the present landowners received conveyance of the land. The court cited the general rule from 31 C.J.S., Estoppel § 38f:
The grantee in a deed will be concluded by recitals therein limiting the quantity or extent of the interest conveyed and making reservations in favor of the grantor or third person. (emphasis added).
Dade County v. Little, 115 So.2d at 22.
The court also cited 19 Am.Jur., Estoppel § 21:
Estoppel of the grantee of a deed, viewed generally, is of the nature of equitable estoppel rather than technical estoppel by deed, since the estoppel is not predicated primarily on the execution of a formal written instrument which cannot be denied or rebutted, but rather on the inability of a person, in the eyes of the law, to acquiesce in, and enjoy the benefits of a transaction and at the same time reject the accompanying burdens. A person cannot claim under an instrument without confirming it. He must found his claim on the whole, and cannot adopt that feature or operation which makes in his favor, and at the same time repudiate or contradict another which is counter or adverse to it.
Id. at 22.
Appellant Leffler suggests that there was not sufficient evidence to put him on notice that the plaintiffs were claiming an easement on his property. However, under Florida's recording act, the recordation of an instrument is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but also of such other facts concerned with the instrument as would have been ascertained from the record if it had been examined and if inquiries suggested by it had been prosecuted. See Hull v. Maryland Cas. Co., 79 So.2d 517 (Fla. 1955); Zaucha v. Town of Medley, 66 So.2d 238 (Fla. 1953). The Lefflers are charged with constructive notice of the 1953 deed and of such facts as they could have ascertained had they made inquiries suggested by the language in the deed. Simple inquiry would have shown the continuous use of the lot in question by the plaintiffs and their predecessors for many years.
As for the Lake Rena lot, we hold that the trial court properly granted reformation of the 51 deeds from Meredith Enterprises in reference to Lot 15, Block "A", Nob Hill Section of Meredith Manor, and further hold that there was sufficient evidence before the trial court to do so. The purchasers acquired an easement in the Lake Rena lot for boat ramp purposes by implication; Meredith Enterprises is equitably estopped from denying to the Meredith Manor lot owners that which they were led to believe they had. See Wilson v. Dunlap, *264 101 So.2d 801 (Fla. 1958); McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953).
Finally, Meredith Enterprises argues that the thrust of plaintiff's action is to obtain specific performance of an oral statement of Meredith Enterprises or Inez Meredith to the effect that the Lake Rena lot would be reserved as a boat ramp for the use of Meredith Manor lot owners. Appellants suggest that enforcement of such an oral promise to create an easement is barred by the statute of frauds. However, neither Leffler nor Meredith Enterprises specifically raised the statute of frauds as an affirmative defense in their pleadings, nor during trial. Therefore, this affirmative defense, not pleaded, was waived. Langlois v. Oriole Land & Dev. Corp., 283 So.2d 143 (Fla. 4th DCA 1973); Fink v. Powsner, 108 So.2d 324 (Fla. 3d DCA 1959).
Accordingly, we affirm the correct result reached by the trial court.
AFFIRMED.
BOOTH, JOHN W., Associate Judge, concurs.
DAUKSCH, C.J., dissents with opinion.
DAUKSCH, Chief Judge, dissenting:
I respectfully dissent. As the majority opinion clearly confirms, it is not possible for a deed to effect the reservation of property right in a third person. A grantor may reserve an estate or a right unto herself, but under the common law, that law yet unchanged,[1] the grantor cannot reserve an estate or right for a third party  a "stranger to the deed." 23 Am.Jur.2d Deeds § 279 (1965); Annot., 88 A.L.R.2d 1199, 1203 § 3 (1963).
Of paramount importance, in my opinion, is the stability of the law in land title matters. See National Equipment Rental Ltd. v. Coolidge Bank & Trust Co., 348 So.2d 1236 (Fla. 2d DCA 1977). For the majority to change an historic title standard by use of the doctrine of estoppel is to certainly disturb the marketplace. Purchasers of real property must be able to presume the law in regard to title to real property remains constant until changed by the Legislature, and then any legislative changes may only apply prospectively. Here the appellants should be able to rely on the fact that an ineffective attempted reservation in a deed will remain forever ineffective, at least as to them if not to their successors in title.
This brings up another point. How long would this estoppel defense be available and to whom? Would all of the appellees' successors in title, forever, be entitled to take the property from all of appellants' successors in title, forever? That is certainly a logical extension if it is assumed the estoppel can be proved forever. That is not a good result and title examiners will surely agree.
NOTES
[1] Fla. Stat. § 2.01 (1979). Common law and certain statutes declared in force. The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the 4th day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state.