493 So.2d 6 (1986)
MORTGAGE INVESTORS OF WASHINGTON, Appellant,
v.
John W. MOORE and John a Martin, Appellees.
No. 85-1521.
District Court of Appeal of Florida, Second District.
July 9, 1986.
Rehearing Denied September 8, 1986.
*7 A.H. Lane of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellant.
John A. Naser of Shannon & Naser, Lakeland, for appellees.
SANDERLIN, Judge.
This is an appeal from an order of final summary judgment in which the trial court found appellant Mortgage Investors of Washington (MIW) liable to maintain the common areas in a mobile home park on which it foreclosed a mortgage.
The material facts are not in dispute and are taken substantially from the trial court's order:
On March 28, 1973, Berknor, Inc., a Florida developer, executed and delivered to MIW a mortgage on a large parcel of real property owned by it in Polk County, Florida, to secure the payment of a promissory note in the amount of $2.8 million. That mortgage was recorded on March 29, 1973, in the public records of Polk County. A portion of the real property had been subdivided into two units for use as a mobile home park, and a third unit was thereafter platted. Simultaneously, Berknor executed and delivered to MIW a financing statement, dated March 28, 1973, encumbering all chattels, personal property, and fixtures of every kind located on the property and used in connection with the operation of the premises.
On July 30, 1973, Berknor executed a document entitled "Declaration of Covenants, Conditions and Restrictions," (the Declaration) which was recorded on August 3, 1973, in the public records of Polk County. The Declaration established a lot owners' association and the rights of the lot owners in certain common areas. The owners' association was charged with the maintenance of the common areas. Berknor was to be the sole member of the owners' association until 825 lots were sold, at which time the lot owners became members of and assumed control of the association. In the course of development and pursuant to the Declaration, Berknor had constructed a clubhouse, pool, and shuffleboard courts on an unsubdivided portion of the property located on the northernmost perimeter. MIW did not join in or consent to the imposition of the Declaration.
The mortgage was modified on July 23, 1973, and recorded on August 3, 1973. The mortgage was later amended on April 17, 1977, and recorded on April 25, 1977. Neither the modification nor the amendment refers to the Declaration.
On November 12, 1973, appellee Martin purchased a lot, and on May 22, 1975, appellee Moore purchased a lot. Both were shown drawings depicting about 890 lots planned for the subdivision. Appellees' deeds were subject to the Declaration. MIW released subdivided lots from the lien of its mortgage, including the lots conveyed to appellees, as development occurred and sales were made, and in consideration for partial release payments provided for in the mortgage.
In 1978 MIW foreclosed on the mortgage after default by Berknor. By certificate of title recorded October 31, 1978, MIW acquired title to the real property described in the mortgage, including the common areas, less those subdivided lots and parcels released prior to commencement of the foreclosure action. Appellees were not joined as defendants in the foreclosure action.
During the foreclosure proceedings and thereafter, the lot owners within the subdivided areas of the property continued to use the clubhouse, pool, and shuffleboard courts, and paid certain of the utility charges. At some point, the lot owners discontinued all contributions to operating expenses. After MIW acquired title, it rehabilitated the clubhouse with a new roof and interior refurbishing. MIW unsuccessfully attempted to reach an accord with the lot owners to pay an assessment of $10 per month for care of the recreational facilities. In early 1984, MIW closed the pool and club house.
The appellees, as lot owners, then filed a complaint against MIW, the principle *8 thrust of which was to compel MIW to maintain and operate the recreational facilities at its sole expense until the entire tract was developed and sold out. MIW answered and asserted affirmative defenses, including the priority of its mortgage over the Declaration, and lack of privity between appellees and MIW. MIW also filed a counterclaim seeking declaratory relief invalidating the Declaration as to its real property, absolving it from any liability to maintain the recreational facilities, and relieving it from any liability for its past, present or future failure to maintain the recreational facilities.
After certain interlocutory pleadings and discovery, MIW and appellees filed their respective motions for summary judgment. At the hearing on the motions, MIW presented testimony that it was not feasible to develop more than 500 or 600 lots on the property, which included lots sold prior to foreclosure.
After the hearing the trial court entered its order of final summary judgment, adjudging that MIW was bound by the Declaration, and was liable to maintain the recreational facilities because it was a subsequent purchaser with constructive notice of the Declaration.
MIW timely appealed, raising the issue whether it, as a purchaser of a partially developed mobile home park at a foreclosure sale, is bound by the Declaration recorded subsequent to recordation of the mortgage which it foreclosed.
In reaching its judgment, the trial court found that MIW had actual notice of the Declaration, even though it was recorded out of MIW's chain of title, and as such, had a duty to inquire into the chain of title. The trial court relied upon Vetzel v. Brown, 86 So.2d 138 (Fla. 1956), which stated:
[R]estrictions are favored by our public policy today, and must be protected by "the activities of courts of equity in preventing fraud and unfair dealing by those who take land with notice of a restriction upon its use, so that in equity and good conscience they should not be permitted to act in violation of the terms of such restrictions."
Id. at 140 (quoting Osius v. Brown, 109 Fla. 556, 147 So. 862 (1933)). The trial court also relied on the following statement from Leffler v. Smith, 388 So.2d 261 (Fla. 5th DCA 1980):
[U]nder Florida's recording act, recordation of an instrument is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but also of such other facts... .
Id. at 263.
While these are accurate statements of the law, they have no application in the present case. Here, MIW was a mortgagee who purchased the mortgage which it foreclosed. Therefore, the title which MIW acquired at the foreclosure sale related back to the date of the mortgage. See Summerlin v. Orange Shores, Inc., 97 Fla. 996, 122 So. 508 (1929). On the date the mortgage was recorded, the Declaration in question was not in existence, and it was not subsequently recorded in MIW's chain of title.
We find Vernon v. Allphin, 98 So.2d 280 (La. Ct. App. 1957), persuasive and instructive. In Vernon, a mortgagor sold portions of the mortgaged property and imposed residential use restrictions. The mortgage was thereafter foreclosed and the land purchased by the mortgagee, who subsequently sold the property to a third party without incorporating the restrictive covenants. The owners of the restricted parcels sought to enjoin use of the unrestricted portion of the property for commercial purposes. The Louisiana court held that the property subject to the mortgage could not be subjected to restrictions which were not in existence when the mortgage was executed, so as to prejudice or diminish the rights of the mortgagee or any future purchaser under a foreclosure sale. Id. at 284.
The rule in Vernon should be applied to the facts in the case at bar. MIW, as mortgagee, should not be deprived of a valuable potential right which they enjoyed *9 on the date that the mortgage was executed. Id. This is true even though MIW may have had actual notice of the presence and use of the recreational facilities on the property on which it successfully foreclosed. In the absence of estoppel, MIW did not have a duty to investigate the chain of title because it had a right to enjoy the property on which it foreclosed as it stood on the date the mortgage was executed. There is nothing in this case to establish the existence of estoppel because there is no evidence of fraud or misrepresentation on the part of MIW to appellees. See Rinker Materials Corp. v. Palmer First National Bank and Trust Company of Sarasota, 361 So.2d 156 (Fla. 1978).
We further note that the cases relied upon by the trial court, i.e., Vetzel and Leffler, are distinguishable in that the conveyances in those cases were expressly subject to easements and restrictions that were recorded in the chain of title which the purchasers simply did not check. Here, the Declaration was not in MIW's chain of title. MIW's title, upon purchase at the foreclosure sale, related back to the date of the initial mortgage and before the Declaration came into existence. Therefore, MIW should take the property as it stood at that time, which was free of the Declaration.
Accordingly, the trial court's final summary judgment in favor of appellees is reversed and the case is remanded to the trial court with directions to enter final summary judgment in favor of MIW.
SCHEB, A.C.J., and CAMPBELL, J., concur.