In re CJW LIMITED, INC., Debtor.

Charles W. GRANT, Trustee for
CJW Limited, Inc., Plaintiff,

v.

Arnold I.B. DAVIS or Mary A. Davis,
as Trustee, et al., Defendants.

Bankruptcy No. 91–2641–BKC–3P7.
Adv. No. 92–8415.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 26, 1994.

Lansing J. Roy, Jacksonville, FL, for trustee.

Richard A. Perry, Ocala, FL, for defendants Camp.

Bruce A. Ballard, pro se.

Marty Smith, Ocala, FL, for defendants Davis and Dix.

John F. Welch, Ocala, FL, for defendant Jimmy Eubanks Plumbing, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon a complaint filed by Charles W. Grant, Chapter 7 Trustee. The nineteen-count complaint seeks to determine the priority, validity and extent of liens, avoidance of liens pursuant to 11 U.S.C. § 545(2), avoidance of preferential and fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548 and 544(b), and preservation of liens avoided for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551. A trial of this adversary proceeding was held on February 10, 1994, and upon the evidence presented the Court enters these findings of fact and conclusions of law:

### Findings of Fact

CJW Limited, Inc. filed a voluntary petition for relief under Chapter 11 on May 21, 1991. Subsequently, the case was converted to chapter 7 and Charles W. Grant was appointed trustee.

One of the assets of the estate was real estate improved with an office building. Upon motion of the trustee and Court order approving the sale free and clear of liens, the trustee sold the real estate ("tealbrooke lot"). The trustee received $416,250.00 from the sale with any liens attaching to the proceeds.

On November 30, 1990, debtor executed a first mortgage to secure a note in the principal amount of $90,000.00 in favor of Arnold I.B. Davis or Mary A. Davis as Trustees. The mortgage was recorded November 30, 1990.

On December 1, 1990, debtor executed a first mortgage to secure a note in the principal amount of $240,000.00 in favor of Arnold I.B. Davis or Mary A. Davis, as Trustees, and Benjamin Dix and Shirley Dix and E. Grant Coulter. The trustee and defendants, Arnold I.B. Davis and Mary Davis as trustees, entered into a stipulation agreeing that the Davises as trustees have a valid first mortgage in the principal amount of $90,000.00 and that the Dixes have a valid first mortgage in the principal amount of $50,000.00. On June 4, 1994, the Court entered an order authorizing distribution to the Dixes in the amount of $65,968.08 and the Davises in the amount of $135,664.45. These sums include interest, fees and costs through October 28, 1993, additional interest accrues at the rate of $15.76 per day under the Dix mortgage and $27.45 per day under the Davis mortgage.

The December 1, 1990, $240,000.00 mortgage was recorded December 19, 1990. Paragraphs 5, 6 and 9 of the mortgage state in relevant part:

5. *Junior Encumbrances.* That the mortgagor will not voluntarily create or otherwise permit to be created or filed against the Mortgaged Property or Premises any mortgage, lien or other liens inferior to the lien of this mortgage and further, that it will keep and maintain the same free from the claim of all persons supplying labor on the materials which will enter into the construction of any and all buildings now being erected or which hereafter may be erected on said premises.

6. *Due on Sale.* Mortgagor(s) expressly agreed that this Mortgage is not assumable. Any sale, further encumbrance or conveyance of any interest in the land encumbered by this Mortgage shall result in the Promissory Note secured hereby becoming immediately due and payable.

9. *Expenses Upon Default.* Upon default by Mortgagor in any of the terms, ... Mortgagor will pay all and singular the costs, charges and expenses, including reasonable lawyers fees and costs of abstract of title, incurred thereby or paid at any time by said Mortgagee, because and/or in the event of the failure on the part of the said Mortgagor to duly, promptly and fully perform, discharge, execute, effect, complete, comply with and abide by each and every the terms [sic] ... of the notes or obligations hereby secured and this Mortgage Deed.

One of the mortgagees on the $240,000.00 mortgage, defendant, Coulter, ("Coulter") contributed $75,000.00 to the note. Debtor deposited Coulter's check in the amount of $75,000.00 into its account December 17, 1990.

Debtor executed a third first mortgage on December 1, 1990, in favor of Arnold I.B. Davis or Mary Davis as Trustees, and Benjamin Dix and Shirley Dix, and E. Grant Coulter, and Horace W. Camp and Elain A. Camp. This mortgage secured a note in the principal amount of $340,602.28. The mortgage was recorded on February 26, 1991. Debtor deposited the $50,000.00 received from the Camps into its bank account on January 17, 1991. The Camps later assigned their interest in the mortgage to Horace W. Camp and Elain A. Camp as trustees of the trust created March 10, 1992.

Coulter made an additional $160,000.00 loan evidenced by a promissory note dated January 15, 1991. The note was secured by a second mortgage executed January 15, 1991. Debtor deposited the $160,000.00 check into its account on the same day. The January 15, 1991, mortgage was not recorded, but defendant, Coulter, filed a notice of lis pendens upon commencing suit to foreclose the mortgage on March 29, 1991.

Debtor executed another second mortgage on February 8, 1991, in favor of Mack Wilburn to secure a note in the principal amount of $75,000.00. The mortgage was recorded February 26, 1991. This mortgage was subsequently assigned to K. Rodney May, Trustee for C.J. Wright and Company, Inc. The trustee and K. Rodney May stipulated and agreed that this mortgage constitutes a preference and that the trustee may avoid this lien.

In count 1, the trustee asserts that all defendants may assert an interest in the property, three of those defendants failed to respond and defaults were entered against them. The trustee asserts in counts 2, 3, 4, and 8 avoidability of a portion of the mortgage liens. In Counts 5, 6, 7 and 9 through 19 the trustee asserts avoidability of fourteen construction liens. Defaults were entered against defendants who failed to answer.

The remaining defendants oppose the trustees action to avoid construction liens.

Defendant, Bruce Ballard, ("Ballard") asserts a lien in the amount of $241,000.00 pursuant to a claim of lien recorded March 25, 1991, at 12:03 p.m. and re-recorded on June 27, 1991. Ballard's claim of lien states that his claim is made pursuant to a contract with C.J. Wright & Co. and that the owner of the property is C.J. Wright & Co. The claim of lien also states that the first date of furnishing labor, services or materials was June 2, 1990, and the last date was March 11, 1991. Upon re-recording on June 27, 1991, Ballard amended the claim of lien to reflect ownership of the property by debtor and work done pursuant to a contract with debtor.

Defendant, Precision Glass & Storefront, Inc., ("Precision Glass") recorded its claim of lien on March 26, 1991, at 12:13 p.m. The trustee and defendant Precision Glass and Storefront, Inc. entered a stipulation agreeing that Precision's claim of lien in the amount of $13,582.32 recorded on March 26, 1991, is a valid construction lien.

Defendant, Milton E. Hames d/b/a M & G Wallcoverings, ("M & G Wallcoverings") recorded a claim of lien in the amount of $900.00 on March 26, 1991, at 3:38 p.m. for labor, services or material furnished between February 18, 1991, and February 25, 1991. The claim of lien reflects that the services were rendered pursuant to a contract with debtor and that the property is owned by debtor. Debtor has not perfected service of process on M & G Wallcoverings and M & G did not file an answer to the complaint.

Defendant, Mid–State Electric of Ocala, Inc. ("Mid–State Electric") recorded a claim of lien March 29, 1991, pursuant to a contract with defendant, Ballard, against owner C.J. Wright & Co., for labor, services or materials furnished August 3, 1990, through February 2, 1991. Mid–State also filed a notice of lis pendens on April 1, 1992.

Defendant, Jimmy Eubanks Plumbing, Inc. ("Eubanks") recorded a claim of lien in the amount of $5,543.12 on March 29, 1991, at 4:43 p.m. The claim of lien states that services were rendered pursuant to a contract

with debtor on property owned by debtor. The first labor, services or materials were furnished on August 1, 1990, and the last were furnished on February 7, 1991. Notice was given to the owner on April 4, 1991, via certified mail.

Defendant, Acousti Engineering Company of Florida, ("Acousti") recorded a claim of lien in the amount of $9,542.00 on April 5, 1991, at 3:18 p.m. Acousti furnished the first labor, service, or materials on January 3, 1991, and the last on February 22, 1991, pursuant to a contract with debtor on property of debtor.

Defendant, Seckman Fire Sprinklers of Ocala, Inc., ("Seckman") recorded a claim of lien in the amount of $5,311.00 on April 8, 1991, at 4:32 p.m. for labor, services or materials furnished between August 17, 1990, and February 20, 1991. The claim of lien states that the labor, services or materials were furnished pursuant to a contract with debtor and that debtor is the owner of the property.

Defendant, Aeicor Aluminum Products Company ("Aeicor") recorded a claim of lien in the amount of $21,400.00 on April 23, 1991, at 11:29 a.m. for labor, services or materials furnished between November 5, 1990, and February 18, 1991, pursuant to a contract with C.J. Wright & Co., a/k/a C.J.W. Ltd. Inc., on property owned by C.J. Wright & Co. The claim of lien states that notice was provided to the owner on September 17, 1990.

George and Gloria McCurdy ("McCurdy") recorded a claim of lien in the amount of $120,000.00 on January 13, 1992, at 2:50 p.m. The claim of lien indicates that the last date for furnishing labor, services, or materials is "N/A" and indicates that the claim of lien seeks to recover $120,000.00 given to an entity related to debtor. The claim of lien indicates that the date of notification to the owner or subcontractor is "N/A."

No notice of commencement was filed concerning the construction of the building on the tealbrooke lot.

### Conclusions of Law

The issue before the Court is the priority, validity and extent of all liens against the property.

### Mortgage Liens

The trustee has stipulated with the Davises that they hold the first mortgage position in the principal amount of $90,000.00 and with the Dixes that they hold the second position in the principal amount of $50,000.00. With regard to that portion of the $240,000.00 mortgage loan provided by Coulter and the portion of the $340,602.28 mortgage provided by the Camps, the trustee asserts these interests are avoidable because the mortgages constitute either fraudulent transfers or preferences.

### Fraudulent Transfer

■ The trustee asserts that debtor received less than reasonably equivalent value from the mortgagees because the mortgagees received credit in the mortgage liens for an amount greater than the amount loaned to debtor. The trustee seeks avoidance of the Camp and Coulter portions of the third and fourth first mortgages pursuant to § 548 which states in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

■ The trustee has the burden of proof on all issues in a fraudulent conveyance ac-

tion. *In re Rodriguez*, 895 F.2d 725, 726 n. 1 (11th Cir.1990). To establish that a fraudulent transaction has been made the trustee must show:

> 1) that there was a transfer of an interest of the debtor in property,
>
> 2) that the transfer occurred within one year preceding the filing of the bankruptcy petition,
>
> 3) that the debtor received less than reasonably equivalent value in exchange for this transfer, and
>
> 4) that the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact.

*In re Damason Constr. Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989).

■ The first element requires that a transfer of an interest in property of the debtor be made. Debtor purchased the tealbrooke lot from the tealbrooke professional park general partnership on June 29, 1990. Defendant Coulter loaned debtor $75,000.00 on December 14, 1990, and the Camps loaned debtor $50,000.00 on January 14, 1991. To secure these loans, debtor executed the two December 1, 1990, mortgages. The mortgages constitute a lien against the property, *Gainesville v. Charter Leasing Corp.*, 483 So.2d 465 (Fla. 1st DCA 1986) and, as such, transfer a security interest in the property of the debtor. The trustee has established the first element required by § 548(a)(2).

The transfers attacked by the trustee occurred within one year of debtor's filing its petition. Debtor deposited the $75,000.00 check from Coulter on December 17, 1990. The $340,602.28 mortgage was executed on December 1, 1990, and debtor deposited the Camp check for this loan on January 17, 1991. Debtor filed its chapter 11 case on May 21, 1991. Thus the transfers occurred within a year of the bankruptcy, and the trustee has established the first two elements of a fraudulent transfer.

■ The trustee must also show that the debtor did not receive reasonably equivalent value from the transfers made to defendants Coulter and Camp. The code does not define reasonably equivalent value but § 548(d)(2) defines value to include: "property, or satisfaction or securing of a present or antecedent debt of debtor." 11 U.S.C. § 548(d)(2). This Court has previously held that a dollar-for-dollar credit is reasonably equivalent value as a matter of law. *In re Simmons*, 124 B.R. 606 (Bankr.M.D.Fla.1991). What constitutes reasonably equivalent value must be determined on a case-by-case basis as determined by the unique facts in each case. *In re Cavalier Homes of Georgia, Inc.*, 102 B.R. 878 (Bankr.M.D.Ga.1989).

The trustee alleges that the mortgages secure amounts larger than those actually loaned by Coulter and Camp. The evidence presented at trial supports this allegation. Copies of checks, deposit slips and the note between debtor, Davis, Dix and Coulter indicate that Coulter gave debtor $75,000.00 while the Coulter portion of the mortgage is $100,000.00. This is so because the Davises loaned debtor $90,000.00 and the Dixes loaned debtor $50,000.00 totalling $140,-000.00, the remaining $100,000.00 secured by the $240,000.00 December 1, 1990, mortgage is greater than the amount Coulter loaned to debtor. The affidavit of indebtedness introduced into evidence indicates that the amount due as of the hearing date was $106,-067.43, with interest accruing at a rate of $22.97 per day.

Similarly, the evidence indicates that the Camps loaned debtor $50,000.00 in conjunction with the 340,602.28 December 1, 1990, mortgage and received credit for $100,000.00. The trustee introduced into evidence a copy of a $50,000.00 check from the Camps to debtor dated December 14, 1990, with "loan on 2300 SE 17th Street Ocala" noted in the memo portion of the check. Debtor deposited the check into its account on December 17, 1990. The Camps testified that they loaned an additional $50,000.00 to debtor which was originally invested with a related debtor, C.J. Wright, Co., Inc. and rolled over into the mortgage. In addition, defendants Camp introduced a ledger page to evidence this transaction. It is unclear where the ledger page came from or what it evidences. The evidence presented is not sufficient to establish that a second $50,000.00 was loaned to debtor. No evidence was produced show-

ing any amount of interest, fees or costs that may be due on this loan, thus the Court holds that the Camps loaned debtor $50,000.00 in conjunction with the $340,602.28 mortgage.

In this case, debtor received value for the transfer of the mortgages because securing a debt constitutes value under § 548(d)(2). The value debtor received for the transfers is not dollar for dollar, but, is something less. Because the trustee's fraudulent transfer claim fails with regard to the solvency issue, the Court need not definitively answer the question whether value less than 100 percent may be reasonably equivalent value.

The trustee failed to produce any evidence with regard to debtor's solvency or insolvency at the time the loans and mortgages were made. Thus the trustee has failed to prove that the mortgages constitute fraudulent transactions under § 548(a)(2).

### Preferential Transfer

■ The trustee challenges the Camp portion of the $340,602.28 mortgage as a preferential transfer avoidable by the trustee pursuant to § 547(b). The trustee argues that recording the mortgage was the final act required to perfect the Camps' interest in the tealbrooke lot. The trustee also alleges, pursuant to § 547(b), that the transfer was to or for the benefit of a creditor, made within 90 days of the petition, made on account of an antecedent debt, while debtor was insolvent[1] and enabled defendants to receive more than they would have received if the case were one under chapter 7 and the transfer had not been made.

Section 547 states in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made

 (3) made while the debtor was insolvent;

 (4) made—

 (A) on or within 90 days before the date of the filing of the petition; ...

 (5) that enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title;

 (B) the transfer had not been made; and

 (C) such creditor received payment of such debtor to the extent provided by the provisions of this title.

The Camps argue that the mortgage was perfected pursuant to § 547(e) on January 14, 1991, upon making the loan to debtor and does not fall within the 90 day preference period. The Camps rely upon § 547(e) and Florida's record notice inquiry rule to argue that the transfer was perfected prior to 90 days before the petition date. Section 547(e) states in relevant part:

(e)(1) For the purposes of this section—

(A) a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

 (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after such time;

 (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

 (C) immediately before the date of the fling of the petition, if such transfer is not perfected at the later of—

 (i) the commencement of the case; or

---

1. In contrast to the requirement that the trustee prove insolvency under § 548, in a preference action, insolvency is presumed. Section 547(f) states: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.". 11 U.S.C. § 547(f).

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

■ Initially, the Court cannot agree with the Camps that if there is a duty to inquire the transfer was perfected on the day the loan was made. · Rather, the date that controls for purposes of determining when a transfer by check is made in a preference action is the date the check is honored. *Barnhill v. Johnson,* — U.S. —, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

■ Pursuant to § 547(e), when the transfer occurred depends upon perfection and the relevant question is when the $320,602.28 December 1, 1990, mortgage was perfected. Pursuant to Fla.Stat. 695.01 a mortgage is perfected upon recording. This is not an absolute rule because an individual relying on the public record to determine the state of title is charged with notice not only of what is in the record but with that which could be discovered through inquiries suggested by the record. *Sapp v. Warner,* 105 Fla. 245, 141 So. 124 (1932); *Zaucha v. Town of Medley,* 66 So.2d 238 (Fla.1953); *Hull v. Maryland Casualty Company,* 79 So.2d 517 (Fla. 1954); *Leffler v. Smith,* 388 So.2d 261 (Fla. 5th DCA 1980); *Air Flow Heating and Air Conditioning, Inc. v. Baker,* 326 So.2d 449 (Fla. 4th DCA 1976).

In *Delesdernier v. O'Rourke & Warren Company,* 305 F.2d 929 (5th Cir.1962) the Fifth Circuit held that whether a prudent purchaser had a duty to inquire whether a guardian's rights were being illegally extinguished constituted a question of fact for the trial court. In addition, based upon a record that contained a guardian's deed, a deed to defendant from the guardian secured by an unrecorded mortgage, a deed from the defendant to the guardian in her individual capacity prior to any satisfaction of the mortgage securing the guardian deed was recorded and a sale by the guardian in her individual capacity without benefit to the guardianship after defendant reconveyed the property to plaintiff individually, the Court opined that the state of the record did impose such a duty.

Similarly, the record in this case created a duty to inquire how more than one first mortgage containing a due-on-sale clause could be granted. Two first mortgages were of record prior to the recording of the $340,-602.28 December 1, 1990, mortgage. The first mortgage was executed on November 30, 1990, by debtor and the Davises and the second first mortgage was executed one day later. The November 30, 1990, mortgage was recorded immediately on November 30, 1990, while the December 1, 1990, mortgage was not recorded until 18 days later on December 19, 1990. Both of these documents contain due-on-sale clauses and indicate that creating additional encumbrances constitutes an act of default. In addition, the parties to the mortgages overlap. The Davises are parties to both the November 30, mortgage and the December 1, mortgage.

The record on December 19, 1990, after the recording of the $240,000.00 mortgage, suggests that a satisfaction of mortgage has not been recorded because of the overlapping mortgagees and the due-on-sale clauses indicate that the mortgage has been satisfied or that the November 30, 1990, mortgage is in default. The record suggests an inquiry to determine whether the mortgage has been satisfied or is in default. If the mortgage has been satisfied, then a satisfaction has not been recorded and indicates that at least one document is unrecorded and that others may be unrecorded as well. The eighteen day gap between recording mortgages executed within one day of each other reinforces this inference and suggests that other unrecorded documents concerning title to the property may exist. At the least, the two first mortgages indicate that something is amiss with the record and title to the property and suggests an inquiry to determine whether the problem is default in the mortgage, unrecorded documents or something else.

Based upon the state of the record, prior to February 26, 1991, when the Camps recorded the $340,602.28 mortgage, the Court agrees that the documents on record created a duty to inquire concerning the number of mortgages on the property, and any unrecorded documents which may affect title. Because the record imposed a duty to in-

quire, the $340,602.28 mortgage was perfected on January 17, 1990, the date that debtor deposited the Camps' check.

The trustee challenges Coulter's unrecorded January 15, 1991, second mortgage asserting that recording a lis pendens against the property on March 29, 1991, constitutes a transfer within the meaning of § 547(e) and is avoidable. The trustee's assertion is incorrect for two reasons, first the transfer occurred prior to the 90 day period, upon debtor's depositing the $160,000.00 check from Coulter, and second, the recording of the lis pendens did not constitute a transfer. As with the Camp mortgage which was perfected when debtor deposited the loan check, the Coulter mortgage was perfected without recording because of the constructive notice provided by the record. Thus, pursuant to § 547(e) the transfer of an interest in property occurred outside of the 90 day period on January 15, 1991, when debtor deposited Coulter's $160,000.00 check. Recording a lis pendens against the property did not create a lien, *In re Sierra,* 79 B.R. 89 (Bankr. S.D.Fla.1987) consequently, recording the lis pendens does not transfer property of the debtor. The transfer occurred upon perfection of the mortgage not upon filing the lis pendens.

The assignee of the Wilburn mortgage stipulated and agreed with the trustee that the granting of the February 8, 1991, mortgage constitutes an avoidable preference and has consented to entry of a judgment avoiding the mortgage lien. Contrary to the trustee's argument that any avoided liens inure to the benefit of the estate, all outstanding liens must be paid in full before the avoided interest can benefit the estate. Consequently, unless the proceeds from the sale of the tealbrooke lot are sufficient to pay all valid liens, the avoidance of the Wilburn mortgage will allow a junior lienor to recover and will not inure to the benefit of the estate.

### Priority

 In general, the earliest recorded mortgage is senior and has priority over later recorded mortgages. *Sapp v. Warner,* 141 So. 124. The Court has previously noted that this is not an absolute rule because

record notice constitutes constructive notice of the information contained in the record as well as the information that would be discovered upon investigating all inquiries suggested by the record. *Zaucha v. Town of Medley,* 66 So.2d 238; *Leffler v. Smith,* 388 So.2d 261. Thus a party may be bound by unrecorded documents if the record suggests a fact which the prudent searcher would investigate, even if this requires searching outside the record. *Lesnoff v. Becker,* 101 Fla. 716, 135 So. 146 (1931); *Hull v. Maryland Casualty Company,* 79 So.2d 517 (Fla.1954).

Applying these principles in this case, the November 30, 1990, Davis mortgage was recorded first on November 30, 1990, and is superior to all other liens. The December 1, 1990, Davis/Dix/Coulter mortgage is second in priority because it was recorded on December 19, 1990. The Davis/Dix/Coulter/Camp mortgage was executed on December 1, 1990, and became effective January 17, 1991, upon debtor's depositing the Camps' check. The fourth lien is the $160,000.00 unrecorded second mortgage held by defendant Coulter. The evidence showed that debtor and Coulter executed a note and mortgage on January 15, 1991, and debtor deposited a check for $160,000.00 on that date. The record provided constructive notice of the unrecorded mortgage of the Camps, likewise, the record provides constructive notice of the unrecorded January 15, 1991, Coulter mortgage and the mortgage was perfected on January 15, 1991, putting it in fourth position.

### Construction Liens

#### Compliance

 The trustee alleges that Eubanks, M & G Wallcoverings, Acousti and Precision Glass may claim an interest in the property but does not seek to avoid their liens. Thus the trustee acknowledges the liens held by Eubanks in the amount of $5,543.12, the lien held by M & G Wallcoverings in the amount of $900.00 and the lien held by Acousti in the amount of $9,542.00 are valid. In addition, the trustee and Precision Glass & Storefront, Inc. have stipulated and agreed that the $13,-582.32 lien filed by Precision Glass is valid.

As to Aeicor and Mid–State, the trustee seeks to avoid the liens because the claim of lien filed by defendants state that the owner of the property is C.J. Wright & Co., not debtor, causing the liens to be unperfected and subject to avoidance under 11 U.S.C. § 545(2).

Section 545(2) states:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of commencement of the case, whether or not such purchaser exists;

The trustee alleges that Seckman's claim of lien is fraudulent because the claim of lien states that materials were delivered pursuant to a contract with debtor, however, in a pleading filed in a related case, Seckman alleged a contract with C.J. Wright, Inc., thus the lien is void.

The trustee also challenges the claim of lien of Ballard because the claim of lien reflects the wrong owner, work done pursuant to a contract with C.J. Wright & Co. and the amended claim of lien correcting these deficiencies was recorded more than 90 days after the last work was furnished. In addition, the trustee asserts that the claim of lien is inflated, is avoidable as a fraudulent transfer and is subject to subordination.

Florida law requires all parties who are not in privity with the owner of the property file a notice of filing claim of lien with the owner and if appropriate with the contractor or subcontractor. Fla.Stat. § 713.05; Fla. Stat. § 713.06(2)(a). Failure to serve this notice is a complete defense to enforcement of the lien. *Id.* To perfect the lien, the lienor must record a claim of lien which specifically states the name and address of the lienor, the person with whom the lienor contracted, the labor, services, and materials furnished, a description of the real property, the name of the owner, the time the first and last items were furnished, the amount that remains unpaid and the date and method of service on the owner if required. Fla.Stat. § 713.08(2).

As long as the one against whom the lien is being enforced is not adversely affected, substantial compliance with the perfection requirements is all that is required. Fla.Stat. 713.08(4)(a); *In re Twelve Oaks, Ltd.,* 59 B.R. 736 (Bankr.M.D.Fla.1986). *In Twelve Oaks,* this Court held that even though mechanics liens were recorded with an incorrect owner name, a name which was not even close to the owner's name, because the claim of lien was recorded under the name of debtor's general partner and land limited partner, the recording was sufficient to apprise the owner of the lienor's intention to assert a lien. In addition to allowing perfection when the owner's name is incorrect, Section 713.08(4)(a) applies to the omission of or error in any of the statements required to be included in the claim of lien. *Adobe Brick & Supply Co. v. Centex–Winston Corp.,* 270 So.2d 755 (Fla. 3rd DCA 1972).

In this case, the trustee challenges perfection of the liens of Ballard, Mid–State and Aeicor on the basis that the claim of lien contains an incorrect name for the owner. This is not sufficient to prevent perfection of the liens. As in *Twelve Oaks,* the recording of defendants' claims of lien is sufficient to apprise debtor of the claim of lien because debtor had notice through its president. The names used by the defendants were similar to debtor's, C.J. Wright, Co., debtor's principal and the principal in the named company were the same and the party against whom the lien was to be enforced was not adversely affected by the incorrect name.

Likewise, because § 713.03(4)(a) governs each item required for perfection, referring to a contract with C.J. Wright Co. on defendant, Ballard's, claim of lien does not prevent perfection of Ballard's lien.

The trustee did not produce any evidence to support his allegation of a fraudulent claim against defendant Seckman Fire Sprinklers or to substantiate the alleged inflation or fraudulent nature of defendant Ballard's claim of lien.

George McCurdy filed a claim of lien on January 13, 1992. Mr. McCurdy is not a defendant in this action, however, the Court provided him the opportunity to be heard at the trial of this proceeding and to introduce evidence as to his claim. Mr. McCurdy did not put any documents into evidence at the trial. Based on the evidence placed into the record by the trustee, Mr. McCurdy's claim of lien is based upon giving $120,000.00 to an entity related to debtor and Mr. McCurdy's attempt to recover those funds. The Court holds that this claim of lien does not comply with chapter 713 Florida Statutes and is invalid.

### Bona Fide Purchaser

■ Although the construction liens are perfected as to the owner of the property, the trustee acts as a hypothetical bona fide purchaser and the adverse affect of recording against an incorrect owner may be different as to a bona fide purchaser who is unaware of the relationship between the debtor and C.J. Wright & Co. than it is to the prior owner of the property. The trustee, as a hypothetical bona fide purchaser, is subject to the duty imposed by Florida's inquiry rule. *In re Hagendorfer*, 803 F.2d 647 (11th Cir. 1986). Thus his ability to avoid liens which were recorded against the wrong owner is governed by Florida's notice inquiry rule which creates a duty to pursue inquiries suggested by facts contained in the documents in the record which would lead to greater inquiry. *Leffler v. Smith*, 388 So.2d 261; *Zaucha v. Town of Medley*, 66 So.2d 238; *Hull v. Maryland Casualty Co.*, 79 So.2d 517.

Although courts have held that misspelling the grantor's or debtor's name, in tax lien cases, is not sufficient to defeat the constructive notice provided by the documents, *Altman v. Simon*, 109 Fla. 196, 147 So. 222 (1933); *Richter's Loan Co. v. United States*, 235 F.2d 753 (5th Cir.1956), in this case, Ballard, Mid–State and Aeicor recorded their liens against C.J. Wright & Co. and not against C.J.W. Limited, Inc. This is far more significant than a misspelling or transposition. *See, In Matter of De La Vergne*, 156 B.R. 773 (Bankr.E.D.La.1993). The names of debtor and C.J. Wright & Co. are similar, the legal description of the property was contained in each of the mortgages and the principal of debtor and C.J. Wright, & Co., Inc., Carl J. Wright signed each of the mortgages. However, no where in the documents of record was reference made to C.J. Wright & Co., Inc.

The Court concludes that these facts do not suggest a search under C.J. Wright & Co., thus, no notice was provided by the documents which were part of the record when the mechanic's liens were improperly recorded. Consequently, a bona fide purchaser would take the property free of these liens, and the trustee as a hypothetical bona fide purchaser has the power to avoid the liens of Mid–State and Aeicor and may preserve the value for the benefit of the estate.

■ Ballard amended his claim of lien to reflect the correct owner on June 27, 1991. His claim of lien states that he furnished the last materials, labor or services on March 11, 1991, thus recordation of the amendment is outside the 90 days provided for recording and is ineffective to perfect the lien. *O'Brian Associates of Orlando, Inc. v. Tully*, 184 So.2d 202 (Fla. 4th DCA 1966). Because the lien which was timely recorded was recorded against C.J. Wright & Co., the trustee may avoid defendant Ballard's construction lien.

Although the proceeds from the sale of the property are insufficient to pay the mortgages which are superior to the construction liens in their entirety and there are no funds available to pay the construction liens, the Court holds that the liens of Seckman, Acousti, M & G Wallcoverings, Eubanks and Precision Glass are valid. In addition, defaults were entered against two defendants, Consolidated Electrical Distributors, Inc., and Design Materials Company which hold valid construction liens against the property.

### Priority

■ Priority of construction liens is determined by the date of filing the notice of commencement unless no notice of commencement is filed, then priority is determined by the date of recording the claim of lien. Fla.Stat. 713.07(2); *Corry Constr. Co., Inc. v. Hector Constr. Cos.*, 363 So.2d 1125 (Fla. 1st DCA 1978). Absent extenuating

circumstances, a mortgage recorded before the notice of commencement or claim of lien is superior to the lien. *Id.*; *G.W. Martin Seawall, Inc. v. Flagship First Nat'l Bank,* 388 So.2d 623 (Fla. 4th DCA 1980).

Applying these principles to the valid liens: Precision Glass is in fifth position with its claim of lien filed on March 26, 1991, at 12:13 p.m.; M & G Wallcoverings is in sixth position with its claim of lien filed March 26, 1991, at 3:38 p.m.; Jimmy Eubanks Plumbing, Inc. is in seventh position with its claim of lien filed March 29, 1991, at 4:43 p.m.; Acousti is in eight position with its lien filed on April 5, 1991; Seckman filed its lien on April 8, 1991, and is in ninth position; Touchstone of Ocala d/b/a Heritage Woods filed its lien on April 16, 1991, and is in tenth position; Consolidated Electrical Distributors, Inc. filed its lien on April 24, 1991, at 9:40 a.m. and is in eleventh position; Design Materials Company filed its lien on May 23, 1991, at 10:37 a.m. and is in twelfth position.

### Conclusion

The Court finds that the proceeds of the sale of the tealbrooke lot are sufficient to pay the Davises interest from October 28, 1993, the Dixes interest from the same date on their mortgage liens, the Camps the principal amount of their mortgage $50,000.00, defendant, Coulter, $106,067.43 from the $240,-000.00 mortgage which includes costs, fees, and interest from February 10, 1994. Coulter is also entitled to receive interest from February 10, 1994, on the $240,000.00 mortgage. The remainder of the $416,250.00 proceeds shall be paid by the trustee to defendant Coulter pursuant to the $160,000.00 January 15, 1991, mortgage. The proceeds from the sale of the tealbrooke lot thus being depleted no distribution can be made on the valid liens. The Court will enter judgments consistent with these findings of fact and conclusions of law and against those defendants who have had a default entered against them.

DATED this 26 day of September, 1994, in Jacksonville, Florida.